WILLIAM G. MALCOLM #129271
BRIAN S. THOMLEY #275132
MALCOLM ♦ CISNEROS, A Law Corporation
2112 Business Center Drive, Second Floor
Irvine, California 92612
Telephone:     (949) 252-9400
Telecopier:     (949) 252-1032
Email: bthomley@mclaw.org

Counsel for Lakeview Loan Servicing, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| MICHAEL SHIFLETT, as the Administrator of the Estate of Michael S. Shiflett,<br><br>Plaintiff,<br><br>v.<br><br>LAKEVIEW LOAN SERVICING, LLC; and DOES 1-10, inclusive,<br><br>Defendants. | Fed. Case No.<br><br>State Case No. 34-2023-00334028-CU-OR-GDS<br><br>**NOTICE OF REMOVAL** |

Pursuant to 28 U.S.C. sections 1332(a) and 1441(a), Defendant LAKEVIEW LOAN SERVICING, LLC ("Lakeview" or "Defendant") hereby removes the action described below to this Court.

## I.     Background

On February 2, 2023, Plaintiff Michael Shiflett, as the Administrator of the Estate of Michael S. Shiflett ("Plaintiff") commenced an action ("State Court Action") in the Superior Court of the State of California for the County of Sacramento ("Superior Court") by filing a complaint against Lakeview and other parties entitled, *Michael Shiflett, as the Administrator of the Estate of Michael S. Shiflett v. Lakeview Loan Servicing*, Case No. 34-2023-00334028-CU-OR-GDS ("Complaint").  A copy of the Complaint is attached hereto as Exhibit "1."

## II.    Basis for Removal:  Federal Question Jurisdiction

The Court has jurisdiction over the State Court Action pursuant to 28 U.S.C. section 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Plaintiff alleges that he owns the real property located at 4351 Englewood Street, Sacramento, California 95838 ("Property") as the successor-in-interest of Michael S. Shiflett, the borrower of a mortgage loan serviced by Lakeview.  (Ex. 1 ¶¶ 1-2.)  He alleges that Lakeview violated various provisions of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and other laws by not providing him loss mitigation options including an assumption of the loan.  In his Fourth Cause of Action for Violation of the Truth in Lending Act, Title 12 C.F.R. § 1026.20:  Denial of Survivorship Rights in the Complaint, he alleges that Lakeview violated 12 C.F.R. section 1026.20, which is part of Regulation Z promulgated to implement TILA, and he seeks actual damages and rescission of the loan pursuant to 15 U.S.C. sections 1640(a) and 1639(j), which are part of TILA.  (¶¶ 34-41.)  In his Fifth Cause of Action for Violation of the Truth in Lending Action [sic] Title 12 C.F.R. § 1024.35, he alleges that Lakeview violated 12 C.F.R. section 1024.35, which is part of Regulation X promulgated to implement RESPA, and he seeks actual damages and rescission of the loan pursuant to 15 U.S.C. sections 1640(a) and 1639(j), which are part of TILA.  (¶¶ 42-48.)  In his Sixth Cause of Action for Violation of the Truth in Lending Action [sic] Title 12 C.F.R. § 1024.38, he alleges that Lakeview violated 12 C.F.R. section 1024.38, which is part of Regulation X promulgated to implement RESPA, and he seeks actual damages and rescission of the loan pursuant to 15 U.S.C. sections 1640(a) and 1639(j), which are part of TILA.  (¶¶ 49-56.)  Therefore, all of these causes of action arise under the laws of the United States.

## III.    Supplemental Jurisdiction

The Court has supplemental jurisdiction over the other causes of action in the Complaint pursuant to 28 U.S.C. section 1367 which provides, in relevant part:

///

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

These causes of action are so related to the others that they form part of the same case or controversy under Article III of the United States Constitution, because they also arise from the non-judicial foreclosure proceedings against the Property.

### IV.    Venue

28 U.S.C. section 1441(a) provides, in relevant part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  Removal to this Court is proper under 28 U.S.C. section 1441(a), because the Superior Court is geographically located within this Court's district and division.

Dated:  March 2, 2023                   MALCOLM ♦ CISNEROS,
                                        A Law Corporation

                                        By:    _/s/ Brian S. Thomley_____
                                               BRIAN S. THOMLEY
                                               Attorney for Lakeview Loan Servicing, LLC

**EXHIBIT 1**

COPY

FILED
Superior Court Of California,
Sacramento
02/02/2023
erubiosielrio
By ................................ . Deputy
Case Number:
34-2023-00334029

CDLG, PC
Tony Cara, Esq., SBN 170720
Fernando Leone, Esq., SBN 147933
2973 Harbor Boulevard, Suite 594
Costa Mesa, CA 92626-3912
Phone: (888) 615-6765
Fax: (888) 660-8874
Litigation.CDLG@gmail.com

Attorney for Plaintiff,
MICHAEL SHIFLETT, as the Administrator of the Estate of Michael S. Shiflett

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SACRAMENTO – GRODON D. SCHABER COURTHOUSE

| | |
|---|---|
| MICHAEL SHIFLETT, as the Administrator of the Estate of Michael S. Shiflett,<br><br>Plaintiff,<br><br>v.<br><br>LAKEVIEW LOAN SERVICING, LLC; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.:<br><br>PLAINTIFF'S COMPLAINT FOR:<br><br>1. VIOLATION OF CIV. CODE § 2923.5;<br>2. VIOLATION OF CIV. CODE § 2924(a)(1);<br>3. VIOLATION OF CIV. CODE § 2924.9;<br>4. VIOLATION OF THE TRUTH IN LENDING ACT, TITLE 12 CFR § 1026.20;<br>5. VIOLATION OF THE TRUTH IN LENDING ACT, TITLE 12 CFR § 1024.35;<br>6. VIOLATION OF THE TRUTH IN LENDING ACT, TITLE 12 CFR § 1024.38;<br>7. NEGLIGENCE;<br>8. WRONGFUL FORCLOSURE;<br>9. UNFAIR BUSINESS PRACTICES, VIOLATION OF BUS. & PROF. CODE § 17200, ET SEQ.;<br>10. CANCELLATION OF WRITTEN INSTRUMENTS, CIV.CODE § 3412;<br><br>(Amount in controversy less than $75,000) |

COMES NOW Plaintiff Michael Shiflett as the Administrator of the Estate of Michael S. Shiflett ("PLAINTIFF"), by and through his counsel, alleges:

1

**PARTIES**

1.    PLAINTIFF Michael Shiflett as the Administrator of the Estate of Michael S. Shiflett is, and at all relevant times mentioned herein was, the rightful and lawful owner of real property commonly known as 4351 Englewood Street, Sacramento, California 95838, ("Subject Property"), is his residence and he is the rightful successor in interest in the Subject Property by way inheritance from his Mother Michael S. Shiflett .

2.    Defendant LAKEVIEW LOAN SERVICING, LLC, ("LLS DEFENDANT") is a Delaware Corporation with its principal place of business in Coral Gables, Florida. LLS DEFENDANT conducts, and at all times mentioned herein conducted, business in Los Angeles County, California. Its agent for service of process is CSC – Lawyers Incorporating Service. LLS DEFENDANT is the purported current loan servicer of the mortgage loan that is the subject of the allegations complained of herein.

3.    PLAINTIFF is ignorant of the true names and capacities of Defendants DOES 1-10, inclusive, and therefore sues them by fictitious names. PLAINTIFF will amend this complaint to allege DOES' true names and capacities when they are ascertained.

4.    PLAINTIFF alleges that DOES 1-10 claim some right, title, estate, lien or interest in the Subject Property that is adverse to PLAINTIFF'S own title. Each of these claims constitutes a cloud on PLAINTIFF'S title to the Subject Property from which PLAINTIFF seeks relief.

5.    PLAINTIFF alleges that DOES 1-10 are contractually, strictly, negligently, intentionally or vicariously liable and/or otherwise legally responsible in some manner for each and every act, omission, obligation, event or happening set forth in this complaint, and that DOES 1-10 are indebted to Plaintiff as hereinafter alleged.

**JURISDICTION AND VENUE**

6.    Jurisdiction of this Court arises under *Cal. Const. Art. VI §10* and *Code Civ. Proc.* §410.10 et seq. because DEFENDANTS engaged in business in the State of California and the acts of wrongdoing alleged in this complaint occurred in California. DEFENDANTS have more than "sufficient minimum contacts" within the State of California such that this Court's exercise of personal jurisdiction over DEFENDANTS herein "does not offend the traditional notions of fair play and

substantial justice." DEFENDANTS herein purposefully directed their activities to the State of California and consummated a transaction with a resident of the State of California, such as Plaintiffs herein. As a result, DEFENDANTS caused an event or events to occur in California, and more particularly in Sacramento County, California, out of which this action arises, and which forms the basis of this action.

7.     Venue is proper in this Court pursuant to *Code Civ. Proc.* § 392(a) because DEFENDANTS' liability to Plaintiff arose within the jurisdictional region of this Court. This Court has jurisdiction over the parties. PLAINTIFF is a resident of Sacramento, California. All DEFENDANTS regularly engage in business within Sacramento County, California, and the real property is located in Sacramento County, California.

8.     PLAINTIFF is suing for damages that are related to violation various California statutes, including but not limited to, the California Homeowner Bill of Rights Act and Federal Regulations lending regulations Under Regulation Z, among others, violated his Survivorship Rights, among other violations wherein the amount of controversy is approximately $75,000.00 and/or according to proof.

## GENERAL AND FACTUAL ALLEGATIONS

9.     PLAINTIFF alleges that on or about April 11, 2017, his late Mother, Michael S. Shiflett obtained a mortgage loan on the Subject Property from Lakeview Loan Servicing, LLC in the amount of $134,500.00, memorialized by a Deed of Trust. The maturity due date is on May 1, 2047. The Trustee was Old Republic Title Company. Mortgage Electronic Registrations Systems, Inc. was nominated as Beneficiary for Lakeview Loan Servicing, LLC. This Deed of Trust was recorded in the Sacramento County, California Recorder's Office as Instrument No. 20170417. **(Exhibit "A," Deed of Trust).**

10.     PLAINTIFF's father and borrower on the subject Deed of Trust, Michael S. Shiflett, passed away February 11, 2021.

11.     PLAINTIFF alleges that he attempted to contact LLS DEFENDANT to obtain a debt validation and a loan modification after his Father passed away, however, LLS DEFENDANT would not take his phone calls or respond to his correspondence in violation of Real Estate Procedures Act (RESPA) and 12 C.F.R. § 1024.31.

12.     PLAINTIFF alleges that on or about March 8, 2022, an Assignment of the Deed of Trust was recorded in the Sacramento County, California Recorder's Office as Instrument No. 202203081440. This assignment purported to assign the Deed of Trust from Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary, to Lakeview Loan Servicing, LLC. **(See Exhibit "B," Assignment of Deed of Trust).**

13.     PLAINTIFF alleges that on or about June 28, 2022, a Notice of Default and Election to Sell Under a Deed of Trust was recorded in the Sacramento County, California Recorder's Office as Instrument No. 202206281031. **(See Exhibit "C," Notice of Default and Election to Sell Under a Deed of Trust).** PLAINTIFF alleges that the Notice of Default and Election to Sell Under Deed of Trust is void under *Code of Civil Procedure* § 2015.5(a) which states "Whenever, under any law of this state or under any rule, regulation, order or requirement made pursuant to the law of this state, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn statement, declaration, verification, certificate, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may with like force and effect be supported, evidenced, established or proved by the unsworn statement, declaration, verification, or certificate, in writing of such person which recites that it is certified or declared by him or her to be true under penalty of perjury, is subscribed by him or her, and (1), if executed within this state, states the date and place of execution, or (2), if executed at any place, within or without this state, states the date of execution and that it is so certified or declared under the laws of the State of California. The certification or declaration may be in substantially the following form: (a) If executed within this state: "I certify (or declare) under penalty of perjury that the foregoing is true and correct. " The attached declaration to the Notice of Default and Election to Sell Under a Deed of Trust is completely devoid of such declaration under the penalty of perjury. Thus, the Notice of Default and Election to Sell Under a Deed of Trust is void ab initio.

\\\
\\\
\\\

SHIFLETT v. LAKEVIEWLOAN SERVICING, LLC, et al.- PLAINTIFF'S COMPLAINT

14.     PLAINTIFF alleges that on or about October 5, 2022, a Notice of Trustee's Sale was recorded in the Sacramento County, California Recorder's Office as Instrument No. 202210050703. **(See Exhibit "D," Notice of Trustee's Sale).** The sale date was set for November 15, 2022. The Subject Property was sold at auction on January 10, 2023.

15.     Under Regulation Z, Title 12 C.F.R. §1026.7, periodic statements must be sent to the borrow. Since the original borrower is deceased, PLAINTIFF is the apparent heir and successor in interest the Subject Property, there was no second lien on this property so collecting and being given a true and more accurate numbers should have been the lenders priority. The Notice of Default and Notice of Trustee's Sale accounting errors occurred.

16.     PLAINTIFF allege that LLS DEFENDANT failed to advise PLAINTIFF in writing within 30 days that their Deed of Trust was transferred or assigned to a third party, and that it is the new owner or assignee of the debt is illegal in violation of Title 15 U.S.C. § 1641(g).

**CAUSES OF ACTION/REMEDIES**

**FIRST CAUSE OF ACTION**

**VIOLATION OF CIV.CODE §2923.5; FAILING TO NOTIFY THE HOMEOWNER ABOUT**

**NOTICE OF DEFAULT**

**(AGAINST LLS DEFENDANT)**

17.     PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

18.     Pursuant to *Civ. Code* § 2923.5(a)(2), a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default pursuant to Section 2924 until all of the following: Contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure, including advising the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose.

\\\

19.    On June 28, 2022, LLS DEFENDANT recorded a Notice of Default on the Subject Property. PLAINTIFF owned the property as he was bequeathed the Subject Property and has lived within Subject Property years prior to foreclosure and when the Notice of Default was issued. Plaintiff received no mail or messages from LLS DEFENDANT. **(Exhibit "C")**

20.    LLS DEFENDANT failed to satisfy the requirements of *Civ. Code* § 2923.5(a)(2) before recording a Notice of Default and violated this statute.

21.    PLAINTIFF requests an injunction and damages.

## SECOND CAUSE OF ACTION

## VIOLATION OF CIV. CODE § 2924(a)(1),

## LACK OF AUTHORITY TO FORECLOSE ON PROPERTY

### (AGAINST LLS DEFENDANT)

22.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

23.    PLAINTIFF is the owner of the Subject Property.

24.    On June 28, 2022, LLS DEFENDANT recorded a Notice of Default on the Subject Property. PLAINTIFF owned the property as he was bequeathed the Subject Property and has lived within Subject Property years prior to foreclosure and when the Notice of Default was issued. Plaintiff received no mail or messages from LLS DEFENDANT. **(Exhibit "C")**

25.    On October 5, 2022, LLS DEFENDANT recorded a Notice of Trustee's Sale on the Subject Property. **(See Exhibit "D")**

26.    *Civ. Code* § 2924(a)(1) requires that the trust deed beneficiary or its agent be the one that authorizes the foreclosure proceeding by filing the Notice of Default and related procedures.

27.    LLS DEFENDANT failed to comply with the requirements of *Civ. Code* § 2924(a)(1) in that the Notice of Default did not include the required statutory requirements: The Notice of Default is further void or voidable, including but not limited to, that the purported Trustee Quality Loan Service Corporation failed to record a Substitution of Trustee with the Solano County Recorder's Office in violation of *Civ. Code* § 2934a(a)(1), and rendering the Notice of Default and Notice of Trustee's Sale re foreclosure sale void pursuant to *Civ. Code* § 2934(a)(e) and 2924(a)(6).

28.    PLAINTIFF has incurred damages for the improper recording of a Notice of Default as it causes immediate damage to a person's credit, causes increased emotional and mental suffering and can cause increased costs being levied based on the Notice of Default being filed which are charged to the loan balance.

29.    These errors in the Notice of Default and Notice of Trustee's Sale give this court proper grounds to vacate the faulty foreclosure procedure.

## THIRD CAUSE OF ACTION

## VIOLATION OF CIV.CODE §2924.9, FAILURE TO PROVIDE HOMEOWNER WITH

## FORECLOSURE ALTERNATIVES

## (AGAINST LLSDEFENDANT)

30.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

31.    On June 28, 2022, LLS DEFENDANT recorded a Notice of Default on the Subject Property. PLAINTIFF owned the property as he was bequeathed the Subject Property and has lived within Subject Property years prior to foreclosure and when the Notice of Default was issued. Plaintiff received no mail or messages from LLS DEFENDANT. **(Exhibit "C")**

32.    LLS DEFENDANT failed to notify PLAINTIFF of all foreclosure prevention alternatives within 5 business days after Notice of Default recorded, as required by *Civ. Code* § 2924.9.

33.    PLAINTIFF is the owner of the Subject Property when the Notice of Default was recorded. PLAINTIFF did not receive any phone calls or phone messages and did not receive any pieces of mail that referred to discussions about alternatives to foreclosure before it was commenced. If PLAINTIFF did receive such contact and communication, he would have taken action to avoid the foreclosure of the Subject Property with other lending sources.

\\\
\\\
\\\
\\\
\\\

# FOURTH CAUSE OF ACTION

## VIOLATION OF THE TRUTH IN LENDING ACT, TITLE 12 C.F.R. § 1026.20

## DENIAL OF SURVIVORSHIP RIGHTS

### (AGAINST LLS DEFENDANT)

34.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

35.    Pursuant to Title 12 C.F.R. § 1026.20 delineates:

(a)    A successor is a person who receives legal interest in a property, typically by a transfer from a family member, by operation of law upon another's death, or under a divorce decree or separation agreement. In all of these situations, where the successor acquires property that is subject to a mortgage, the successor is not personally liable for the associated debt but may choose to assume the debt. The Garn-St Germain Depository Institutions Act of 1982 prohibits the creditor from exercising a due-on-sale clause based upon certain types of transfers, including the common situation of transfer upon death of a relative. Even where a due-on-sale clause may be exercised, however, creditors may agree to add the successor ASA named obliger under the loan contract.

(b)    A successor is a person who receives legal interest in a property, typically by a transfer from a family member, by operation of law upon another's death, or under a divorce decree or separation agreement. In all of these situations, where the successor acquires property that is subject to a mortgage, the successor is not personally liable for the associated debt but may choose to assume the debt. The Garn-St Germain Depository Institutions Act of 1982 prohibits the creditor from exercising a due-on-sale clause based upon certain types of transfers, including the common situation of transfer upon death of a relative. Even where a due-on-sale clause may be exercised, however, creditors may agree to add the successor as a named obliger under the loan contract.

36.    Here, the heir was not given the right for Assumption as they should have by LLS under the law. The servicer would not even consider PLAINTIFF as successor in interest.

37.    LLS DEFENDANT violated Title 12 § 1026.41(b)(1) and (2), and (d) by failing to provide periodic loan statements regarding existing loan amount, current interest rate and amount due.

\\\

8

38.    LLS DEFENDANT's violation of Title 12 § 1026.41 entitles them to actual damages for these violations pursuant to Title 15 U.S. Code § 1640(a).

39.    LLS DEFENDANT's violation of Title 12 § 1026.41 entitles them to a rescission of the loan pursuant to Title 15 C.F.R.§ 1639(j).

40.    PLAINTIFF is entitled to actual damages for these violations pursuant to Title 15 U.S. Code § 1640(a).

41.    PLAINTIFF is entitled to a rescission of the loan pursuant to Title 15 C.F.R.§ 1639(j).

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE TRUTH IN LENDING ACTION TITLE 12 C.F.R. § 1024.35

### (Against LLS DEFENDANT)

42.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

43.    Title 12 CFR states a servicer must provide the successor in interest written information with respect to any loan.

44.    LLS failed to provide PLAINTIFF any written information regarding the loan or attempt to assist in its policy and procedures to open up loss mitigation.

45.    LLS DEFENDANT's violation of Title 12 § 1024.35 entitles them to actual damages for these violations pursuant to Title 15 U.S. Code § 1640(a).

46.    LLS DEFENDANT's violation of Title 12 § 1024.35 entitles them to a rescission of the loan pursuant to Title 15 C.F.R.§ 1639(j).

47.    PLAINTIFF is entitled to actual damages for these violations pursuant to Title 15 U.S. Code § 1640(a).

48.    PLAINTIFF is entitled to a rescission of the loan pursuant to Title 15 C.F.R.§ 1639(j).

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE TRUTH IN LENDING ACTION TITLE 12 C.F.R. § 1024.38

### (Against LLS DEFENDANT)

49.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

9

50.    Title 12 CFR § 1024.38 states a servicer is required to confirm the potential identity and ownership interest in the property must be reasonable. LLS DEFENDANT did performed no due diligence to confirm the identity of PLAINTIFF, thus violating § 1024.38.

51.    LLS DEFENDANT violated Title 12 CFR § 1024.38(b)(2)as they did not properly evaluate any loss mitigation applications or provide the successor in interest (PLAINTIFF) any information to complete the task of loss mitigation.

52.    LLS DEFENDANT violated Title 12 CFR § 1024.38(b)(23)(v) as they did not provide PLAINTIFF any policy or procedures that was in place to evaluate for loss mitigation option consistent with any owners or assignee requirements.

53.    LLS DEFENDANT's violation of Title 12 § 1024.38 entitles them to actual damages for these violations pursuant to Title 15 U.S. Code § 1640(a).

54.    LLS DEFENDANT's violation of Title 12 § 1024.38 entitles them to a rescission of the loan pursuant to Title 15 C.F.R.§ 1639(j).

55.    PLAINTIFF is entitled to actual damages for these violations pursuant to Title 15 U.S. Code § 1640(a).

56.    PLAINTIFF is entitled to a rescission of the loan pursuant to Title 15 C.F.R.§ 1639(j).

### SEVENTH CAUSE OF ACTION

### NEGLIGENCE

### (AGAINST LLS DEFENDANT)

57.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

58.    PLAINTIFF alleges that LLS DEFENDANT breached their duty of ordinary care and good faith to PLAINTIFF, and their duty not to put PLAINTIFF in a worse position when they:

59.    Failed to notify the homeowner about possible foreclosure and to wait 30 days after notice to record a Notice of Default in violation of *Civ. Code* § 2923.5.

60.    Used a Trustee, Servicer or Beneficiary that lacked legal authority to conduct the Trustee's Sale in violation of *Civ. Code* § 2924 (a)(1), *Civ. Code* § 2934a(a)(1),  2934(a)(e) and 2924(a)(6);

61.    Failed to rescind all foreclosure activity upon the application for a loan modification application in violation of *Civ. Code* § 2923.6(c);

62.    Failed to provide PLAINTIFF with a Single Point of Contact in violation of *Civ. Code* § 2937;

63.    Failed to notify PLAINTIFF of foreclosure alternatives within 5 business days after recording a Notice of Default in violation of *Civ. Code* § 2924.9;

64.    Failed to provide written acknowledgement of receipt of a loan modification application in violation of *Civ. Code* § 2924.10;

65.    Violated *Title 15 U.S.C.* § 1641(g) by failing to contact PLAINTIFF after recording an Assignment of the Deed of Trust and notify the that it is the new beneficiary of the Deed of Trust.

66.    LLS DEFENDANT owed PLAINTIFF a duty of care because their activities violated affirmative statutory duties extrinsic to loan modification.

67.    LLS DEFENDANT's breaches are the ***actual*** and ***proximate cause*** of PLAINTIFF'S damages because, but for their breaches of statutory duties, PLAINTIFF'S would not be facing foreclosure. If LLS DEFENDANT  acted reasonably and lawfully carrying out their statutory duties, PLAINTIFF would have avoided large arrears and large interest, penalties and a weakened position in negotiating the foreclosure issue at hand.

68.    As a consequence of LLS DEFENDANT's practice in this regard, PLAINTIFF suffered damages by **(1)** costs and attorneys' fees spending numerous hours and resources in providing them with updated financial documents; **(2)** incurred additional and unnecessary late penalties on top of the default servicing which included the recording of the Notice of Sale; **(3)** damaged her credit reports in the process; and **(4)** higher arrears that is no longer affordable to PLAINTIFF; and faces foreclosure.

69.    PLAINTIFF demands restitution damages in an amount to be determined at trial and to disgorge LLS DEFENDANT's profits. PLAINTIFF incurred copying and faxing costs and attorney fees in the loan modification application process.

\\\

\\\

\\\

1

### EIGHTH CAUSE OF ACTION

2

### WRONGFUL FORECLOSURE

3

### (AGAINST LLS DEFENDANT)

4      70.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth

5  fully herein.

6      71.    LLS DEFENDANT foreclosed on the Subject Property and recorded a Trustee's Deed

7  Upon Sale.

8      72.    LLS DEFENDANT caused an illegal, fraudulent, or willfully oppressive sale of the

9  Subject Property pursuant to a power of sale in a mortgage or deed of trust.

10     73.    PLAINTIFF is excused from the tender requirement because of LLS DEFENDANT's

11  violations of Civ. Code § 2923.5, 2924(a)(1), 2934a(a)(1).

12     74.    . PLAINTIFF is entitled to monetary damages for the loss of the Subject Property and

13  his investment in it.

14     75.    PLAINTIFF is entitled to have the wrongful foreclosure vacated, and have the Trustee's

15  Deed Upon Sale, Notice of Default and Notice of Trustee's Sale cancelled.

16     76.    PLAINTIFF is entitled to punitive damages for wrongful foreclosure. See *Kachlon v.*

17  *Markowitz* (2008) 168 Cal.App.4th 316, 345. The managing agents of LLS DEFENDANT were

18  responsible for setting this illegal and unauthorized foreclosure and related tort actions.

19

### NINTH CAUSE OF ACTION

20

### UNFAIR BUSINESS PRACTICES, VIOLATION OF BUS. & PROF.CODE §17200, ET SEQ.

21

### (AGAINST LLS DEFENDANT)

22     77.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth

23  fully herein.

24     78.    LLS DEFENDANT is engaged in the business of lending money for real property

25  purchases and selling mortgages/deed of trust as secured loans, and or servicing those loans.

26     79.    PLAINTIFF alleges that LLSDEFENDANT violated *Bus. & Prof. Code* §§ 17200, *et*

27  *seq.*, by engaging in unlawful, unfair, and fraudulent business practices as alleged above.

28  \\\

---

12

SHIFLETT v. LAKEVIEWLOAN SERVICING, LLC, et al.- PLAINTIFF'S COMPLAINT

80.    LLS DEFENDANT violated the Homeowners' Bill of Rights by failing to timely and fairly evaluate PLAINTIFF for loan modification.

81.    PLAINTIFF alleges that LLSDEFENDANT negligently made false representations. LLS DEFENDANT's negligent conduct is likely to deceive members of the public generally because they offered modifications, but not actual assistance with such actions as described herein.

82.    PLAINTIFFS allege that LLS DEFENDANT violated the "unfair," "unlawful," and "fraudulent" prongs of the UCL resulting in injury and economic loss to PLAINTIFFS when they:

83.    Implemented a severely flawed loss mitigation review process in which borrowers, like PLAINTIFF, are persuaded to rely on LLS DEFENDANT's loan modification review process;

84.    The process is purposefully lengthy so that loss mitigation and loan modification will not be timely provided. LLS DEFENDANT purposefully caused a lengthy delay in order to cause PLAINTIFFS and borrowers like PLAINTIFF to incur continuing interest charges that would otherwise be mitigated, late fees, and ultimately foreclosure costs that would erode a borrower's equity or severely diminish any possibility for future equity;

85.    LLS DEFENDANT purposefully impeded timely loss mitigation denial or approval while expressing that PLAINTIFF are in review prevents PLAINTIFF from seeking other external loss mitigation options including abandoning the property and/or short sale;

86.    Ignored PLAINTIFF'S communications and failed to communicate with PLAINTIFF regarding the financial distress regarding mortgage loan repayment;

87.    Purposely violated *Civ. Code* §§ 2923.5, 2924(a)(1), 2934a(a)(1), 2924a(e), 2923.6(c), 2923.7, 2924.9 and 2924.10.

88.    LLS DEFENDANT's business practices of failing to advise homeowners in writing within 30 days that their Deed of Trust was transferred or assigned to a third party, and that it is the new owner or assignee of the debt is illegal in violation of Title 15 U.S.C. § 1641(g).

89.    These acts and more are unlawful and unfair conduct has caused substantial harm to PLAINTIFF and the California citizenry at large.

90.    A borrower may bring an unfair claim per the statute by alleging that a servicer's statements or conduct was misleading.

91.    In the present case, the information provided to PLAINTIFF was certainly misleading and not consistent as to the status of the loan modification and what she was supposed to do to satisfy the lender's demands.

92.    PLAINTIFF has suffered an actual, pecuniary injury of the loss of the equity in the value of the Subject Property, and the costs of seeking a remedy for LLS DEFENDANT's wrongful actions.

93.    Under the three-factor analysis test found in *Zuniga v. Bank of America, N.A.,* 2014 WL 7156403 (C.D. Cal. Dec. 9, 2014), PLAINTIFF has stated a viable UCL claim.

94.    PLAINTIFF demands restitution, and that LLS DEFENDANT disgorge their illicit profits and that PLAINTIFF receive all monetary awards statutorily due to him.

## TENTH CAUSE OF ACTION

## CANCELLATION OF WRITTEN INSTRUMENTS, CIV. CODE § 3412

### (AGAINST LLS DEFENDANT)

95.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

96.    PLAINTIFF has had a reasonable belief that the Notice of Default, instrument no. 202206281031 and Notice of Trustee's Sale, instrument no. 202210050703 are voidable or void ab initio. **(Exhibit "C" and "D")**

97.    PLAINTIFF has a reasonable apprehension that if these voidable or void ab initio recorded written instruments are left outstanding, they may cause serious injury to PLAINTIFF because of their violations of *Civ. Code* §§ 2923.5, 2924(a)(1), 2934a(a)(1), 2924a(e), 2923.6(c), 2923.7, 2924.9 and 2924.10.

98.    PLAINTIFF seeks to cancel the hereinabove written instruments pursuant to *Civ. Code* § 3412 due to their being voidable or void, clouds on title and wrongfully recorded.

\\\
\\\
\\\
\\\
\\\

## PRAYER FOR RELIEF

1.  For compensatory, special and general damages in an amount subject to proof at trial;

2.  For civil penalties pursuant to *Civ. Code* § 2924.12 (b) for the greater of treble damages or $50,000.

3.  For an injunction enjoining DEFENDANTS from conducting further foreclosure activity in particular, recording a Notice of Default, Notice of Trustee's Sale and/or conducting a Trustee's Sale, or recording a Trustee's Deed Upon Sale against the Subject Property pursuant to *Civ. Code* § 2924.12(b);

4.  For restitution and the disgorgement of profits;

5.  For an injunction stopping the violations of the HBOR statutes;

6.  For an injunction cancelling the void or voidable written instruments;

7.  For actual damages for violation of Title 12 § 1026.41 and Title 15 U.S. Code § 1640(a).

8.  For a rescission of the loan pursuant to Title 15 C.F.R.§ 1639(j);

9.  For attorney's fees pursuant to *Civ. Code* § 1788.30(c);

10. For an order awarding PLAINTIFF reasonable attorney's fees pursuant to *Civ. Code* § 2924.12 (h);

11. For reasonable costs of suit pursuant to *Code Civ. Proc.* § 1032;

12. For recompense of damages and arrears; and

13. For any other relief as it may deem just and proper.


DATED: February 2, 2023                    CDLG, PC


                                BY: _____
                                    Tony Cara, Esq.,
                                    Fernando Leone, Esq.,
                                    Attorney for Plaintiff, Michael Shiflett

15

EXHIBIT "A"

When recorded, mail to:
Lakeview Loan Servicing, LLC
Attn: Post Closing
1301 Virginia Drive Suite 325
Fort Washington, PA 19034

Sacramento County Recorder
Donna Allred, Clerk/Recorder
BOOK **20170417** PAGE **0723**
Check Number **569341**
**Monday, APR 17, 2017  1:32:06 PM**
Ttl Pd    $60.00     Rcpt # 0009508400

BAM/61/1-14

Title Order No.: 17-597798

LOAN #: ███████

------------------------------------ [Space Above This Line For Recording Data] ------------------------------------

## DEED OF TRUST

| MIN ███████████ |

MERS PHONE #: 1-888-679-6377

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated **April 11, 2017,**                     together with all
all Riders to this document.
(B) "Borrower" is   **MICHAEL S. SHIFLETT, AN UNMARRIED MAN.**

Borrower's address is  **4351 ENGLEWOOD ST, Sacramento, CA 95838.**

Borrower is the trustor under this Security Instrument.
(C) "Lender" is   **Lakeview Loan Servicing, LLC.**

Lender is  **a Limited Liability Corporation,**                              organized and existing under the laws of
**Delaware.**                                        Lender's address is  **4425 Ponce De Leon**
**Boulevard, MS5-251, Coral Gables, FL 33146.**

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01                    Initials: _MSS_
Ellie Mae, Inc.                                     Page 1 of 13                                   CAEDEDL   0315
                                                                                                  CAEDEDL (CLS)
                                                                                            04/06/2017 09:27 AM PST

(D) "Trustee" is  Old Republic Title Company.

LOAN #: ████████

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated  April 11, 2017.           The Note states that Borrower owes Lender ONE HUNDRED THIRTY FOUR THOUSAND FIVE HUNDRED AND NO/100* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S.  $134,500.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 1, 2047.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider             ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider ☐ Other(s) [specify]
☐ 1-4 Family Rider           ☐ Biweekly Payment Rider
☐ V.A. Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and

Initials: _MSS_

CAEDEDL  0315
CAEDEDL (CLS)
04/06/2017 09:27 AM PST

LOAN #: ██████████

all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County**                                                    [Type of Recording Jurisdiction]
of **Sacramento**                                                    [Name of Recording Jurisdiction]:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
**APN #: 237-0443-005-0000**

which currently has the address of    **4351 ENGLEWOOD ST, Sacramento,**

                                                                                                    [Street] [City]
California **95838**                              ("Property Address"):
            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   **1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
Ellie Mae, Inc.                                         .Page 3 of 13                          Initials: _MSS_
                                                                                                    CAEDEDL   0315
                                                                                                    CAEDEDL (CLS)
                                                                                              04/06/2017 09:27 AM PST

LOAN #: ▮▮▮▮▮▮▮▮

to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.



**LOAN #:** ▮▮▮▮

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
Ellie Mae, Inc.
Page 5 of 13

Initials: _MSS_

CAEDEDL 0315
CAEDEDL (CLS)
04/06/2017 09:27 AM PST

LOAN #: ▮▮▮▮▮▮▮▮

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
Ellie Mae, Inc.                                  Page 6 of 13                                  Initials: _____

CAEDEDL  0315
CAEDEDL (CLS)
04/06/2017 09:27 AM PST

LOAN #: ███████

from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)** Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration

Initials: 
CAEDEDL 0315
CAEDEDL (CLS)
04/06/2017 09:27 AM PST

LOAN #: 

period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
Ellie Mae, Inc.                                      Page 8 of 13                    Initials: _MSS_

CAEDEDL  0315
CAEDEDL (CLS)
04/06/2017 09:27 AM PST

LOAN #: ████

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
Ellie Mae, Inc.

Page 9 of 13

Initials: _MSS_

CAEDEDL 0315
CAEDEDL (CLS)
04/06/2017 09:27 AM PST

LOAN #:

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Initials: _MSS_

CAEDEDL  0315
CAEDEDL (CLS)
04/06/2017 09:27 AM PST



**LOAN #:** ████████

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
Ellie Mae, Inc.

Page 11 of 13

Initials: _MSS_

CAEDEDL  0315
CAEDEDL (CLS)
04/06/2017 09:27 AM PST

LOAN #: ▊▊▊

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_M SS_____        _4-11-17_ (Seal)
MICHAEL S. SHIFLETT                                              DATE

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of CALIFORNIA
County of SACRAMENTO

On APRIL 11, 2017, before me, _Catherine L. Dubyak, Notary Public_ (here insert name and title of the officer), personally appeared MICHAEL S. SHIFLETT, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Catherine L. Dubyak_____ (NOTARY)

(SEAL)

```
CATHERINE L. DUBYAK
COMM. #2125601
NOTARY PUBLIC-CALIFORNIA
SACRAMENTO CO.
EXP. SEP 26, 2019
```

Initials: _M SS_
CAEDEDL  0315
CAEDEDL (CLS)
04/06/2017 09:27 AM PST

LOAN #: ████████

Lender: Lakeview Loan Servicing, LLC
NMLS ID: ██████
Loan Originator: William Ryan Bailey
NMLS ID: ████████

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
Ellie Mae, Inc.
Page 13 of 13

Initials: 
CAEDEDL  0315
CAEDEDL (CLS)
04/06/2017 09:27 AM PST

**Exhibit "A"**
**Legal Description**

The land described herein is situated in the State of California, County of Sacramento, City of Sacramento, described as follows:

Lot 569, as shown on the "Plat of Glenwood Park Unit No. 4", Recorded in Book 127 of Maps, Map No. 8, Records of said County.

A.P.N. :  237-0443-005-0000

EXHIBIT "B"

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, LLC

[AND WHEN RECORDED MAIL TO]
LoanCare, LLC
C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

Sacramento County
Donna Allred, Clerk/Recorder

Doc # **202203081440**

3/8/2022          3:02:48 PM
EG
Titles          1
Pages          2

| | |
|---|---|
| Fees | $99.00 |
| Taxes | $0.00 |
| PCOR | $0.00 |
| Paid | $99.00 |

## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR LAKEVIEW LOAN SERVICING, LLC, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, assign, transfer, and set over all of its rights, title, and interest in the described Deed of Trust, representation or warranty, including all liens and any rights due or to become due thereon to LAKEVIEW LOAN SERVICING, LLC, WHOSE ADDRESS IS C/O 3637 SENTARA WAY, VIRGINIA BEACH, VA 23452, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by **MICHAEL S. SHIFLETT** and recorded on 04/17/2017 as Book **20170417** and Page **0723** in the office of the SACRAMENTO County Recorder, CA. Modification: 02/24/2020 INSTR: 202002240374

Dated on _2/ 25 /2022_ (MM/DD/YYYY)
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR LAKEVIEW LOAN SERVICING, LLC, ITS SUCCESSORS AND ASSIGNS

By: _____
Shannon McKinney
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

LC004  431019158    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)    LC MERS    MIN
████████████████ MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026  DOCR
T252202-08:16:18 [C-2]  FRMCA1

## ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on ___2_/_25_/2022 (MM/DD/YYYY), by Shannon McKinney as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR LAKEVIEW LOAN SERVICING, LLC, ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

Aaron Burdick HH 066179
Notary Public - STATE OF FLORIDA
Commission expires: 11/22/2024

AARON BURDICK
NOTARY PUBLIC
STATE OF FLORIDA
COMM# HH 066179
EXPIRES: 11/22/2024

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
LC004  431019158    MORTGAGE  ELECTRONIC  REGISTRATION  SYSTEMS,  INC.  (MERS)    LC  MERS    MIN
███████████    MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026    DOCR
1252202-08 16:18 [C-2] FRMCA1

EXHIBIT "C"

Sacramento County
Donna Allred, Clerk/Recorder

Doc # **202206281031**

| | | | |
|---|---|---|---|
| | | Fees | $101.00 |
| 6/28/2022 | 1:53:04 PM | Taxes | $0.00 |
| MCY | Electronic | PCOR | $0.00 |
| Titles | 1 | Paid | $101.00 |
| Pages | 3 | | |

**RECORDING REQUESTED BY:**

ServiceLink

**WHEN RECORDED MAIL TO:**

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

APN: 237-0443-005-0000         TS No: CA05000261-22-1         TO No: 220385050-CA-VOI

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1). The Summary will be provided
to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this Notice of Default may be recorded (which date of recording appears on this notice).

This amount is $19,888.37 as of June 27, 2022, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or Mortgage, the Beneficiary or Mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or Mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or Mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Beneficiary or Mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

APN: 237-0443-005-0000                TS No: CA05000261-22-1                TO No: 220365050-CA-VOI

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: **Lakeview Loan Servicing, LLC c/o MTC Financial Inc. dba Trustee Corps** located at 17100 Gillette Ave Irvine, CA 92614 Phone: 949-252-8300 TDD: 866-660-4288 Ref No: CA05000261-22-1

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** MTC Financial Inc. dba Trustee Corps is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated as of April 11, 2017, executed by MICHAEL S. SHIFLETT, AN UNMARRIED MAN, as Trustor(s), to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, as nominee for LAKEVIEW LOAN SERVICING, LLC, the original Beneficiary, recorded April 17, 2017 in Book 20170417, on Page 0723, and that said Deed of Trust was modified by Modification Agreement and recorded February 24, 2020 as Instrument Number 202002240374, of the official records in the Office of the Recorder of Sacramento County, California, as more fully described on said Deed of Trust. Including a Note(s) for the sum of $134,500.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: **THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON December 1, 2020 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, ALONG WITH LATE CHARGES, PLUS ALL OF THE TERMS AND CONDITIONS AS PER THE DEED OF TRUST, PROMISSORY NOTE AND RELATED LOAN DOCUMENTS.**

That by reason thereof, the present Beneficiary under such Deed of Trust, has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Where required by law, a declaration pursuant to California Civil Code Section 2923.5(b) or California Civil Code Section 2923.55 is attached.

Dated: June 27, 2022                    **MTC Financial Inc. dba Trustee Corps**
                                        **as Duly Appointed Successor Trustee**

                                        By: Loan Quema, Authorized Signatory

**To the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.  However, a secured party retains rights under its security instrument, including the right to foreclose its lien.**

# CALIFORNIA DECLARATION OF COMPLIANCE
## (Civil Code § 2923.55(c))

Borrower(s):     MICHAEL S SHIFLETT
Mortgage Servicer:  LoanCare, LLC
Property Address:  4351 ENGLEWOOD ST
                SACRAMENTO, CA 95838
T.S. No:       CA05000261-22-1

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☐ The mortgage servicer has contacted the Borrower pursuant to California Civil Code § 2923.55(b)(2) to "assess the Borrower's financial situation and explore options for the Borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☒ The mortgage servicer has exercised due diligence to contact the Borrower pursuant to California Civil Code § 2923.55(f) to "assess the Borrower's financial situation and explore options for the Borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual did not meet the definition of 'Borrower' pursuant to subdivision (c) of Section 2920.5.

4. ☐ No contact was made with the Borrower pursuant to Civil Code § 2923.55 because the above-referenced loan is not secured by a first lien mortgage or deed of trust on an owner-occupied residential real property. As described in Civil Code § 2924.15(a), "owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes.

Additionally, pursuant to California Civil Code § 3273.10:

1. ☒ The mortgage servicer has not denied the borrower a forbearance request on or after 8/312020.

2. ☐ The mortgage servicer was unable to approve the borrower's request for a forbearance on or after 8/31/2020, and a forbearance was not subsequently provided. A copy of the notice is attached.

3. ☐ The mortgage servicer was unable to approve the borrower's request for a forbearance on or after 8/31/2020, however, a forbearance was subsequently provided. A copy of the approval notice is attached.

4. ☐ The requirements of California Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of trust on "owner-occupied" or qualifying tenant –occupied residential real property as defined by California Civil Code § 2924.15.

5. ☐ The mortgage servicer is in compliance with California Civil Code § 3273.10 because the mortgage servicer has complied with the relevant provisions regarding forbearance in Section 4022 of the federal Coronavirus Aid, Relief, and Economic Security Act (the CARES Act) (Public Law 116-136), including any amendments or revisions to those provisions, pursuant to California Civil Code § 3273.10(d).

I certify and represent that this mortgage servicer's declaration is accurate, complete and based upon competent and reliable evidence, including my review of the mortgage servicer's business records.

Date: _____6/21/2022_____      LoanCare, LLC

By  *Eric Kessler*

ATTACHMENT TO NOTICE OF DEFAULT
Eric Kessler
Assistant Secretary

# EXHIBIT "D"

RECORDING REQUESTED BY:

ServiceLink

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

**Sacramento County**
**Donna Allred, Clerk/Recorder**

| Doc # **202210050703** | | Fees | $101.00 |
|---|---|---|---|
| 10/5/2022 | 12:43:48 PM | Taxes | $0.00 |
| JL | Electronic | PCOR | $0.00 |
| Titles 1 | | Paid | $101.00 |
| Pages 3 | | | |

---

APN: 237-0443-005-0000          TS No: CA05000261-22-1                    TO No: 220365050-CA-VOI

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
(The above statement is made pursuant to CA Civil Code Section 2923.3(d)(1). The Summary will be provided
to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(d)(2).)

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED April 11, 2017. UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

On November 15, 2022 at 09:00 AM, **East Main Entrance, Gordon D. Schaber Sacramento County
Courthouse, 720 9th Street, Sacramento, CA 95814, MTC Financial Inc. dba Trustee Corps**, as the
duly Appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust
Recorded on April 17, 2017 in Book 20170417, on Page 0723 and that said Deed of Trust was modified
by Modification Agreement and recorded February 24, 2020 as Instrument Number 202002240374, of
official records in the Office of the Recorder of Sacramento County, California, executed by MICHAEL S.
SHIFLETT, AN UNMARRIED MAN, as Trustor(s), in favor of MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., as Beneficiary, as nominee for LAKEVIEW LOAN SERVICING, LLC
as Beneficiary, **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER**, in lawful money of the
United States, all payable at the time of sale, that certain property situated in said County, California
describing the land therein as: **AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST**

The property heretofore described is being sold "as is". The street address and other common
designation, if any, of the real property described above is purported to be: **4351 ENGLEWOOD ST,
SACRAMENTO, CA 95838**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other
common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or
encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with
interest thereon, as provided in said Note(s), advances if any, under the terms of the Deed of Trust,
estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

APN: 237-0443-005-0000          TS No: CA05000261-22-1          TO No: 220365050-CA-VOI

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $152,254.85 (Estimated). However, prepayment premiums, accrued interest and advances will increase this figure prior to sale. Beneficiary's bid at said sale may include all or part of said amount. In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the Trustee. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right. The property offered for sale excludes all funds held on account by the property receiver, if applicable.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

## Notice to Potential Bidders

If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a Trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a Trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same Lender may hold more than one mortgage or Deed of Trust on the property.

## Notice to Property Owner

The sale date shown on this Notice of Sale may be postponed one or more times by the Mortgagee, Beneficiary, Trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about Trustee Sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call Auction.com at 800.280.2832 for information regarding the Trustee's Sale or visit the Internet Website address www.Auction.com for information regarding the sale of this property, using the file number assigned to this case, CA05000261-22-1. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Website. The best way to verify postponement information is to attend the scheduled sale.

APN: 237-0443-005-0000                TS No: CA05000261-22-1              TO No: 220365050-CA-VOI

## Notice to Tenant

### NOTICE TO TENANT FOR FORECLOSURES AFTER JANUARY 1, 2021

You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call 800.280.2832, or visit this internet website www.Auction.com, using the file number assigned to this case CA05000261-22-1 to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

Date: October 4, 2022

MTC Financial Inc. dba Trustee Corps
TS No. CA05000261-22-1
17100 Gillette Ave
Irvine, CA 92614
Phone: 949-252-8300
TDD: 866-660-4288

By: Loan Quema, Authorized Signatory

**SALE INFORMATION CAN BE OBTAINED ONLINE AT www.Auction.com**
**FOR AUTOMATED SALES INFORMATION PLEASE CALL:**
**Auction.com at 800.280.2832**

To the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

1

**PROOF OF SERVICE**

2

3       I am employed in the County of Orange, State of California.  I am over the age of 18

4   and not a party to the within action.  My business address is 2112 Business Center Drive,

5   Second Floor, Irvine, California, 92612.

6       On March 2, 2023, I served the foregoing documents described as:

7   **1) NOTICE OF REMOVAL; 2) CIVIL COVER SHEET** on the interested parties in this

8   action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

9   <u>Attorneys for Plaintiff</u>
    Tony Cara, Esq.
10  Fernando Leone, Esq.
    2973 Harbor Boulevard, Suite 594
11  Costa Mesa, CA 92626

12

13  [X]    (BY MAIL):  I placed the envelope for collection and mailing, following our ordinary

14         business practices.  I am readily familiar with the firm's business practice of collection

15         and processing correspondence for mailing.  On the same day that correspondence is

16         placed for collection and mailing, it is deposited in the ordinary course of business with

17         the United States Postal Service, in a sealed envelope with postage fully prepaid.

18  [X]    (FEDERAL) I declare under penalty of perjury under the laws of the United States of

19         America that the foregoing is true and correct.

20         Executed on March 2, 2023, at Irvine, California.

21

22                                    */s/ Christina Valenzuela*
                                      Christina Valenzuela

23

24

25

26

27

28