1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL SHIFLETT, as the                No.  2:23-cv-00397-DJC-EFB
     Administrator of the Estate of Michael S.
12   Shiflett,

13                   Plaintiff,              ORDER AND FINDINGS AND
                                             RECOMMENDATIONS
14          v.

15   LAKEVIEW LOAN SERVICING, LLC,

16                   Defendant.

17

18          This is an action brought by the administrator of an estate alleging that the servicer of a

19   mortgage loan, which was secured by real property of the estate, violated the Real Estate

20   Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq., ECF No. 1 at 13, and the Truth in

21   Lending Act (TILA), 15 U.S.C. § 1601 et seq., *id*. at 7.  The case was filed initially in Sacramento

22   County Superior Court and was removed to this court based on federal question jurisdiction.  ECF

23   No. 1.  The core allegations of the complaint are that the defendant wrongfully foreclosed upon a

24   house plaintiff inherited from his father, did so in a manner that failed to give plaintiff proper

25   notices required by federal and California statutes, and ignored plaintiff's communications that

26   could have avoided the foreclosure.

27   ////

28   ////

                                                    1

1       The case is now before the court on defendant's motion to dismiss the complaint for

2  failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 4, which

3  plaintiff opposes, ECF No. 7.  For the reasons stated below, the motion must be granted in part

4  and denied in part.

5                           <u>Factual Allegations</u>

6       Plaintiff alleges that his father Michael S. Shiflett ("Michael S.") obtained a residential

7  mortgage in the amount of $134,500 from defendant Lakeview Loan Servicing, LLC (Lakeview)

8  in 2017.  ECF No. 1 at 7.  The mortgage was memorialized by a deed of trust recorded in the

9  Sacramento County Recorder's Office naming defendant as the beneficiary (the "Deed of Trust").

10  *Id*.  Michael S. died on February 11, 2021.  *Id*.  Plaintiff alleges he is the administrator and heir of

11  Michael S.'s estate, and the rightful successor in interest to the residence.  *Id*. at 6.  He also

12  alleges that he lived at the residence for "years prior to foreclosure" and he continues to live at the

13  residence.  *Id*.; *id*. at 10 ¶ 24.

14       Plaintiff alleges that he attempted to contact defendant after Michael S.'s death, but

15  defendant did not respond to his phone calls or correspondence, and that this violates the RESPA

16  and 12 C.F.R. § 1024.31.  *Id*. at 7.  On June 28, 2022, a notice of default and election to sell under

17  the Deed of Trust was recorded (the "Notice of Default").  ECF No. 1 at 8, 39-41.  The Notice of

18  Default identifies Michael S. as the "borrower."  It describes the monies in default as "the

19  installment of principal and interest which became due on December 1, 2020 and all subsequent

20  installments of principal and interest, along with late charges."  ECF No. 1 at 40, 41.  The amount

21  in default was $19,888.37 as of June 27, 2022.  *Id*. at 39.

22       The complaint alleges that the Notice of Default did not contain language regarding

23  certification or declaration of truth required by California Code of Civil Procedure § 2015.5(a),

24  and that this omission voids the Notice of Default and violates 15 U.S.C. § 1641(g).  ECF No. 1

25  at 8.  The complaint further alleges that defendant failed to send periodic statements to plaintiff as

26  the apparent heir to the property, as required "[u]nder Regulation Z, Title 12 C.F.R. § 1026.7."

27  ECF No. 1 at 9 ¶ 15.  The property was sold at auction for $258,000 on January 10, 2023.  ECF

28

1    No. 5 at 16-17.[1]

2        Although the claims asserted in the complaint are not a model of clarity, they are premised

3    on alleged violations of two federal statutes (RESPA and TILA) and a variety of state law claims.

4                                          Jurisdiction

5        The court must ascertain its subject matter jurisdiction regardless of whether the parties

6    have raised the question. *United Investors Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960,

7    967 (9th Cir. 2004). Removal to this court was premised on the existence of a federal claim.

8    *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513-14 (2006) (federal question jurisdiction under 28

9    U.S.C. § 1331 confers power on a federal court to hear a case which cannot be forfeited nor

10   waived). Plaintiff's complaint cites two separate federal statutes and their associated federal

11   regulations – the Truth in Lending Act and the Real Estate Settlement Procedures Act.

12       The complaint's fourth cause of action relies upon the federal regulations at 12 C.F.R. §

13   1026.20, as well as 12 C.F.R. § 1026.41(b)(1) & (2), which are promulgated under the Truth in

14   Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* 12 C.F.R. Part 1026 and its subparts are also

15   collectively known as "Regulation Z" of TILA. *See* 12 C.F.R. § 1026.1(a). The complaint

16   separately cites other provisions of TILA and its Regulation Z, including 15 U.S.C. § 1641(g)

17   (notice of new mortgage loan creditor), and 12 C.F.R. § 1026.7 (definitions). The court has

18   jurisdiction under § 1331 to entertain plaintiff's TILA claim.

19       The complaint's fifth and sixth causes of action nominally cite TILA in their captions, but

20   the substantive text of those claims alleges violations of the federal regulations at 12 C.F.R. §

21   1024.35 and § 1024.38, which are promulgated under the Real Estate Settlement Procedures Act

22   (RESPA), 12 U.S.C. § 2601 *et seq.* 12 C.F.R. Part 1024 and its subparts are also collectively

23   known as "Regulation X" of RESPA. *See* 12 C.F.R. § 1024.1.

24       The court construes the complaint's fifth and sixth causes of action as substantively

25   alleging claims under RESPA. The court's jurisdiction to consider plaintiff's RESPA claims is

26   clear. RESPA, at 12 U.S.C. § 2614, explicitly grants federal district courts jurisdiction over

27   actions brought pursuant to §§ 2605, 2607, and 2608 of the statute. Section 2605 governs

28

---

[1] Defendant's request for judicial notice, ECF No. 5, is addressed *infra*.

1    servicing of mortgage loans, and RESPA's Regulation X at 12 C.F.R. §§ 1024.35 and 1024.38

2    addresses aspects of mortgage loan servicing.  Plaintiff's RESPA claims under § 1024.35 and §

3    1024.38 relate to the servicing of a residential mortgage loan and are within the scope of 12

4    U.S.C. § 2605.  *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665 (9th Cir. 2012).  The court

5    accordingly concludes that it also has jurisdiction under § 1331 over plaintiff's claims that are

6    based on RESPA's Regulation X.

7         This court may exercise supplemental jurisdiction over any state-law claims if they "are so

8    related to claims in the action within such original jurisdiction that they form part of the same

9    case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

10   The court finds that plaintiff's state-law claims, which are premised on the same factual

11   allegations as plaintiff's federal claims, satisfy this standard.

12                            Defendant's Request for Judicial Notice

13        Plaintiff has attached to his complaint four documents that had been filed in the

14   Sacramento County Recorder's Office; the Deed of Trust, the Notice of Default, an assignment of

15   the Deed of Trust, and a notice of trustee's sale.  ECF No. 1 at 20-45.  Documents attached to a

16   complaint may be considered in ruling on a motion to dismiss.  *Hal Roach Studios, Inc. v.*

17   *Richard Feiner & Co*., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).  Further, defendant does not

18   object to the court's consideration of the attachments to the complaint.  Thus, the court will

19   consider those records in resolving defendant's motion to dismiss.  *See Pederson v. Greenpoint*

20   *Mortg. Funding, Inc*., 900 F. Supp. 2d 1071, 1076 (E.D. Cal. 2012).

21        Apart from the attachments to the complaint, defendant has submitted with its motion to

22   dismiss exhibits which are also official public records filed in the Sacramento County Recorder's

23   Office.  Defendant requests judicial notice of these documents.  The fact that these documents

24   were filed in the Recorder's Office, and their textual content, are not facts subject to reasonable

25   dispute.  Further, plaintiff has not objected to defendant's request.  *See generally* ECF No. 7.

26   Accordingly, the court takes judicial notice of the additional records from the Recorder's Office.

27        However, taking judicial notice of the existence and content of the records does not

28   constitute an adjudication of disputes over the credibility of factual representations made within

                                              4

1    those documents.  Here, plaintiff has explicitly and implicitly disputed the accuracy of at least

2    some of the factual representations stated in these records.  Resolving those underlying factual

3    disputes by way of judicial notice is not appropriate.   Rather, the court's role at this point is to

4    determine whether, in light of the parties' arguments about these records, the complaint states a

5    cause of action.  *See Pratap v. Wells Fargo Bank, N.A*., 63 F. Supp. 3d 1101, 1104 n.1 (N.D. Cal.

6    2014) (where plaintiff objected to defendants' request for judicial notice of official records, the

7    court limited its judicial notice to "undisputable facts – such as the filing [of the document] or the

8    fact that the document states something to give context, as opposed to the truth of the matter

9    asserted in any document").  In short, judicial notice of the official records attached to plaintiff's

10    complaint or submitted with defendant's motion does not convert defendant's Rule 12(b)(6)

11    motion to a motion for summary judgment.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th

12    Cir. 2001).

13         The court therefore takes judicial notice of the filing of the documents in the Recorder's

14    Office and the text of those records, but not the truth of matters asserted in them where the

15    accuracy of any such assertion is disputed.

16                                   Rule 12(b)(6) Standard

17         In considering a motion to dismiss, the court must accept as true the allegations of the

18    complaint in question, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976),

19    construe the pleading in the light most favorable to the party opposing the motion, and resolve all

20    doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S.

21    869 (1969).

22         To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege enough specific

23    facts to provide both "fair notice" of the particular claim being asserted and "the grounds upon

24    which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007) (citation omitted);

25    *see also* Fed. R. Civ. P. 8(a).  "[A] complaint must contain sufficient factual matter … to 'state a

26    claim to relief that is plausible on its face.'  A claim has factual plausibility when the plaintiff

27    pleads factual content that allows the court to draw the reasonable inference that the defendant is

28    liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

5

1            <u>The Motion to Dismiss</u>

2          Defendant moves to dismiss the complaint in its entirety.  The court first addresses the

3    motion as to the federal law claims.

4            <u>Fourth Cause of Action (TILA)</u>

5          The fourth cause of action cites several provisions of TILA and its Regulation Z.  ECF

6    No. 1 at 12.  Some of the TILA provisions cited in the fourth cause of action may give rise to a

7    private right of action, while other provisions may only be enforced by federal regulatory

8    agencies.  *See* 15 U.S.C. § 1607 (administrative enforcement of TILA); *id*. § 1640 (civil liability

9    under TILA in individual and class actions).  Section 1640 provides for civil liability with respect

10   to only Parts B, D, and E of Subchapter I of TILA, but not Part C (related to closed-end credit).[2]

11   *Smeyres v. General Motors Corp.*, 660 F. Supp. 31, 32-33 (N.D. Ohio 1986); *see also* 12 C.F.R. §

12   1026.1(d)(3) (setting forth the organization and describing the subparts of Regulation Z).

13         The fourth cause of action includes a citation to 12 C.F.R. § 1026.20 of TILA's

14   Regulation Z.  ECF No. 1 at 12.  Section 1026.20 relates to disclosure requirements upon

15   refinancing of a loan.  The fourth cause of action also purports to quote text from § 1026.20(a) &

16   (b), ECF No. 1 at 12 ¶ 35, but the quoted language does not appear in § 1026.20.[3]  Nor does the

17   fourth cause of action actually allege any violation of § 1026.20.  For these reasons, plaintiff's

18   citations to § 1026.20 do not give rise to a plausible cause of action.

19         However, the fourth cause of action also claims that defendant violated TILA's

20   Regulation Z, at 12 C.F.R. § 1026.41(b)(1) & (2), by failing to provide periodic loan statements.

21   ECF No. 1 at 12-13, ¶¶ 37-39.  Section 1026.41(b) addresses the topic of "Periodic statements for

22   _____

23         [2]  Subchapter I of TILA, at 15 U.S.C. §§ 1631-1644, governs credit transactions and
     Subchapter II, at 15 U.S.C. §§ 1661-1665, governs credit advertising.  *See Jordan v. Montgomery
24   Ward & Co*., 442 F.2d 78, 81 (8th Cir. 1971).  Within Subchapter I, Part B includes the topic of
     residential mortgages, at 15 U.S.C. §§ 1639-1639h, Part D governs credit billing, and Part E
25   governs consumer leases.  *See also LeVick v. Skaggs Cos., Inc*., 701 F.2d 777, 780-81 (9th Cir.
     1983) (rejecting implied private right of action under Subchapter II of TILA relating to wage
26   garnishment).

27         [3]  Based on a Westlaw word search for the quote, the text appears to be quoted from Carol
     V. Clark, Padrick's RESPA, TILA, HOEPA and ECOA in Real Estate Transactions with Forms §
28   2:157 (5th ed. 2024), Westlaw PRTHE (Secondary Sources database).

1   residential mortgage loans." This is a topic within TILA Part B (residential mortgages) and/or

2   TILA Part D (credit billing) for which a private right of action is allowed. Defendant argues that

3   plaintiff had no right to receive periodic loan statements because plaintiff had no right to assume

4   Michael S.'s mortgage loan. ECF No. 4 at 13. Defendant also argues that plaintiff is not entitled

5   to rescission of the loan under 15 U.S.C. § 1631(a) and § 1635(a) of TILA. Plaintiff responds

6   broadly that "[t]he statutory requirements for Title 12 C.F.R. are [that] the loan servicer … must

7   provide the successor in interest written information with respect to any loan and [is] required to

8   confirm the potential identity and ownership interest in the property[.]" ECF No. 7 at 11.

9       <u>Analysis</u>. Section 1026.41 of TILA's Regulation Z sets forth general requirements for

10  residential mortgage loan servicers to provide periodic statements regarding the status of the

11  mortgage loan, including information about amounts due and past due and the amount needed to

12  bring the account current, and how to contact the servicer. The complaint alleges that defendant

13  violated § 1026.41(b)(1) and (2), but § 1026.41(b) has no subsections (1) and (2). The fourth

14  cause of action is so poorly articulated that it is impossible to determine how, when, or why

15  plaintiff alleges that defendant violated § 1026.41. The complaint generally alleges inaccuracies

16  and accounting errors, ECF No. 1 at 9 ¶ 15, in conjunction with the missing periodic statements,

17  but does not explain how these are related.

18      At § 1026.41(g), TILA's Regulation Z requires a servicer to provide periodic statements

19  to confirmed successors in interest,[4] but only after the confirmed successor in interest has either

20  assumed the mortgage loan obligation or has given the servicer an executed acknowledgment in

21  accordance with § 1024.32(c)(1)(iv) of RESPA's Regulation X. The fourth cause of action does

22  not cite § 1026.41(g) and neither of the conditions described in § 1026.41(g) appears to have been

23  met. The question of whether § 1026.41(g) provides a successor in interest (confirmed[5] or not)

24  with a cause of action has not been addressed by the parties.

25

26      [4] As discussed more fully below regarding RESPA and the Fifth Cause of Action, a
    "confirmed successor in interest" is a party whose identity and ownership interest in the subject
27  property has been confirmed by the loan servicer. 12 C.F.R. § 1024.31

28      [5] Confirmation of a successor in interest under RESPA is discussed *infra*.

Moreover, neither plaintiff nor defendant has substantively addressed whether any alleged violation of § 1026.41(b) would support plaintiff's demand for damages pursuant to 15 U.S.C. § 1640(a) or for rescission of the mortgage loan pursuant to 15 U.S.C. § 1639(j) and if so whether the rescission refers to the 2017 original mortgage or Michael S.'s 2019 loan modification discussed *infra*, or even whether any such claim is timely.  *See Behl v. Specialized Loan Servicing, LLC*, No. 23-cv-00478-BLF, 2023 WL 5059539, at *3 (N.D. Cal. Aug. 8, 2023) (TILA claims generally have a one-year limitations period except that violations of 15 U.S.C. § 1639, 1639b, or 1639c are subject to a three-year statute of limitations); *see also Jesinoski v. Countrywide Home Loans, Inc*., 574 U.S. 259, 262-63 (2015) (TILA's three year rescission window only requires the borrower to give written notice of rescission within that time, it is not a limitations period for filing suit); *Ortiz v. Accredited Home Lenders, Inc*., 639 F. Supp. 2d 1159, 1163 (N.D. Cal. 2009) (three year window for rescission starts when loan transaction is consummated, but residential loan transactions are excluded from the right of rescission by 15 U.S.C. § 1635(e)); *Turcios v. Specialized Loan Servicing, LLC*, Case No. CV 21-7506-GW-JEMx, 2022 WL 19569534, at *2 n.2 (C.D. Cal. Jan. 18, 2022) ("Section 1639(j) has nothing to do with any right of rescission (under TILA or otherwise)").  All this, together with the inapplicable and incorrect citation to 12 C.F.R. § 1026.20, makes the fourth cause of action too conclusory and garbled to state an actionable claim.  Accordingly, the fourth cause of action must be dismissed with leave to amend.

### Fifth Cause of Action (RESPA Regulation X, 12 C.F.R. § 1024.35)

The fifth cause of action alleges that defendant failed to provide any written information regarding the mortgage loan or attempt to assist with loss mitigation, in violation of RESPA's Regulation X, 12 C.F.R. § 1024.35.  Plaintiff seeks damages and rescission of the mortgage loan, albeit incorrectly citing TILA's remedial provisions.  Defendant moves to dismiss on the grounds that the claim is "unintelligible."  ECF No. 4 at 14.  Defendant maintains that the complaint fails to allege facts showing that plaintiff is a borrower within the meaning of Regulation X.  Defendant argues that the complaint fails to allege that plaintiff is a successor in interest because there is no allegation that plaintiff initiated a probate case or was appointed administrator of

1    Michael S.'s estate.  Defendant further argues that 12 C.F.R. § 1024.35 does not require a loan

2    servicer to provide a successor in interest with written information or to attempt to assist with loss

3    mitigation, but that, even if it did, any remedies would be under RESPA, not TILA.  Plaintiff's

4    response simply reiterates his contention that under Title 12 of the Code of Federal Regulations a

5    loan servicer "must provide the successor in interest written information with respect to any loan"

6    and is required to "confirm the potential identity and ownership interest in the property."  ECF

7    No. 7 at 11.

8           <u>Analysis</u>.  As discussed below, the complaint sufficiently alleges that plaintiff is a

9    successor in interest which therefore qualifies plaintiff as a borrower with the meaning of

10   Regulation X.  Section 1024.31 of RESPA's Regulation X defines some, but not all, of the terms

11   relevant to analysis of the fifth cause of action.  A "successor in interest" is

12          … a person to whom an ownership interest in a property securing a mortgage loan
            subject to this subpart is transferred from a borrower, provided that the transfer is:
13

14          (1) A transfer by devise, descent, or operation of law on the death of a joint tenant
            or tenant by the entirety;

15          (2) A transfer to a relative resulting from the death of a borrower;

16          (3) A transfer where the spouse or children of the borrower become an owner of
            the property;
17

18          (4) A transfer into an inter vivos trust in which the borrower is and remains a
            beneficiary and which does not relate to a transfer of rights of occupancy in the
            property1
19

20   *Id*.

21          Such a person becomes a "confirmed successor in interest … once a loan servicer[6] has

22   confirmed the successor in interest's identity and ownership interest in a property that secures a

23

24          [6]  Defendant's motion to dismiss does not dispute that defendant is a "loan servicer"
     within the meaning of RESPA's Regulation X, 12 C.F.R. § 1024.2.  *See Vanisi v. Citibank, N.A*.,
25   No. 23-cv-02835-RFL, 2024 WL 1091196 (N.D. Cal. Feb. 26, 2024) (discussing RESPA's
     definitions of loan servicer, subservicer, and master servicer); *see also In re Coppola*, 596 B.R.
26   140, 155 (D.N.J. 2018) ("the Court will read RESPA and particularly Regulation X as an
     integrated set of laws and regulations and determines that the duties and obligations of a servicer
27   and the definition of servicing must be read to include the duties and obligations specifically
     described in the various sections of Regulation X, including (without limitation) §§ 1024.35,
     1024.36, and 1024.41." (footnote omitted)).
28

9

mortgage loan subject to this subpart." *Id*.; *see Walker v. PHH Mortgage Corp.*, Case No. 22-cv-23276-BLOOM/Otazo-Reyes, 2023 WL 1778514, at *6 (S.D. Fla. Feb. 6, 2023) (written communication from loan servicer stated "[w]e have confirmed you are a successor-in-interest for the above referenced account"). When the loan servicer confirms the status of a successor in interest, the confirmed successor in interest thereby attains the status of a "borrower." *See* 12 C.F.R. § 1024.30(d) (a confirmed successor in interest "shall be considered a borrower"). Neither RESPA nor Regulation X contains any definition of the term "borrower." *Faria v. Citizens Bank, N.A.*, 569 F. Supp. 3d 92, 97 (D.R.I. 2021) (the term "borrower" is not defined in RESPA or its implementing regulations); *see* 12 U.S.C. § 2602; 12 C.F.R. § 1024.2. Some courts have opined that a borrower is usually the person who signed the promissory note securing the mortgage. *Faria*, 569 F. Supp. 3d at 97 (citing *Spaulding v. Citifinancial Serv., LLC*, 2018 WL 1698263, at *3 (D. Mass. Apr. 6, 2018)). Significantly, RESPA itself does not require that a borrower be a signatory, since RESPA clearly places non-signing, confirmed successors in interest on the same footing as a signatory. Thus, the complaint adequately alleges that plaintiff is a successor in interest for purposes of the statute.

A loan servicer has a duty under RESPA to respond to written borrower inquiries relating to servicing of the loan. 12 U.S.C. § 2605(e). Servicing means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan … and making the payments of principal and interest and such other payments with respect to the amounts received from the mortgage as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). Inquiries relating to the origination or terms of the loan itself are contractual issues rather than servicing issues. *Medrano*, 704 F.3d at 666-67. The inquiry must be a qualified written request (QWR), meaning that it contains sufficient information to enable the servicer to identify the name and account of the borrower. It also must give sufficient detail regarding the information being sought or state the reasons why the borrower believes the account is in error. 12 U.S.C. § 2605(e)(1)(A), (e)(2). A QWR need only reasonably identify the borrower and account and state the information sought by the borrower. *Medrano*, 704 F.3d at 666; *see also Warren v. PNC Bank Nat'l Ass'n*, 671 F. Supp. 3d 1035, 1049 (N.D. Cal. 2023) (servicer received sufficient

1   notice in a written request that gave the name, loan number, address of the property, and stated

2   that a "'mix up regarding payments' had occurred" and that the plaintiff "was 'not sure what

3   happened or how this transpired'"); *Morgan v. Caliber Home Loans, Inc*., 26 F.4th 643, 650 (4th

4   Cir. 2022) (a statement of reasons sufficient to allow the servicer to understand the error in

5   question satisfies requirements for a QWR).

6          RESPA's Regulation X, at 12 C.F.R. § 1024.35(b), elaborates on 12 U.S.C. § 2605(e)

7   with a list of topics which may be requested in a QWR and to which a servicer must respond.

8   The list includes inquiries about loss mitigation options and foreclosure, notices of non-judicial

9   foreclosure process, conducting a foreclosure sale in violation of § 1024.41(g), and a catch-all for

10  "any other error relating to the servicing of a borrower's mortgage loan." *See Naimoli v. Ocwen*

11  *Loan Servicing, LLC*, 22 F.4th 376, 381-82, 384 (2d Cir. 2022) (when servicer lost mortgagee's

12  documents and thereby made mortgagee ineligible for lower interest rate, this was a covered error

13  encompassed by the catch-all language of § 1024.35(b)(11)); *In re Coppola*, 596 B.R. 140, 156-

14  59 (Bankr. D.N.J. 2018) (catch-all at § 1024.35(b)(11) encompassed servicer's failure to respond

15  to mortgagor's request to explain how servicer arrived at income determination).  Requests

16  encompassed by the catch-all must still relate to servicing, and not loan origination or contract

17  formation.  *See Fox v. Statebridge Co., LLC*, 629 F. Supp. 3d 300, 309-10 (D. Md. 2022)

18  (inquiries about loss mitigation options and the servicer's delay in deciding on a loss mitigation

19  application were covered under §1024.35(b), but inquiry about incorrect amounts set in a trial

20  payment plan was a contractual issue unrelated to servicing and therefore not within the §

21  1024.35(b)(11) catch-all).

22         The loan servicer must conduct a reasonable investigation in response to the borrower's

23  QWR.  *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 718 (8th Cir. 2018); *see also*

24  *Wilson v. Bank of America, N.A.*, 48 F. Supp. 3d 787, 806-07 (E.D. Pa. 2014) (Regulation X

25  introduced the requirement that a servicer's investigation be "reasonable").  The borrower,

26  including a confirmed successor in interest, may bring suit if the servicer fails to respond to a

27  QWR in violation of RESPA's Regulation X.  *See Faria*, 569 F. Supp. 3d at 97-98 (according to

28  amendments to Regulation X promulgated in 2018, confirmed successors in interest have the

11

status of borrowers and may assert a cause of action for RESPA violations). The servicer has no

obligation to respond to inquiries from any other person. *See Singh v. Wells Fargo Bank, N.A.*,

No. 2:11-cv-0401-GEB-JFM (PS), 2011 WL 2118889, at *2, 4 (E.D. Cal. May 27, 2011) (joint

tenant who was not identified as a borrower on wife's mortgage document was not a borrower;

wife was not deceased and there was no issue regarding succession or estate administration). The

servicer may be liable for actual damages causally linked to the failure to reasonably investigate

and respond to a QWR, reasonable costs and attorney fees, as well as statutory damages up to

$2,000 if the servicer has engaged in a pattern or practice of noncompliance. 12 U.S.C. §

2605(f)(1) & (3); *Dahar v. Pennymac Loan Services, LLC*, No. 2:23-cv-01020-CDS-NJK, 2024

WL 4989075, at *4 (D. Nev. Dec. 4, 2024).

There is some ambiguity about what exactly constitutes confirmation of the successor in

interest's status that triggers a servicer's duty to respond to a QWR under § 1024.35, as well as a

lack of clarity about whether and when a potential or not-yet-explicitly-confirmed successor in

interest may bring a claim against the servicer. A separate provision of RESPA's Regulation X,

at 12 C.F.R. § 1024.36(i), requires a loan servicer to respond to written requests from a person

who indicates he may be a successor in interest and identifies the borrower and loan account, and

requires the servicer to engage in a process that ends with explicit confirmation or rejection.[7] But

despite the goal of requiring a servicer to conduct a reasonable investigation as to successors in

interest, a potential successor in interest has no private right of action for a servicer's failure to

comply with this formal procedure. Amendments to the 2013 Mortgage Rules Under the Real

Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 81

Fed. Reg. 72160, 72175 (Oct. 19, 2016) (to be codified at 12 CFR Parts 1024 and 1026) ("the

---

[7] The loan servicer's response to a person who indicates he may be a successor in interest must provide "a written description of the documents the servicer reasonably requires to confirm the person's identity and ownership interest in the property." 12 C.F.R. § 1024.36(i)(1). The loan servicer must comply within time limits, must conduct reasonable searches for requested information, and must provide contact information for further assistance. *Id*. (citing *id*. § 1024.36(c)-(g)). Even if the putative successor in interest's request does not allow immediate identification of the documents needed for confirmation, the servicer "may provide a response that includes examples of documents typically accepted to establish identity and ownership interest in the property." *Id*. § 1024.36(i)(2). Any new information from the putative successor in interest is to be treated as a new request and the servicer "must respond accordingly." *Id*.

final rule does not provide *potential* successors in interest a private right of action or a notice of error procedure for claims that a servicer made an inaccurate determination about successorship status or failed to comply with § 1024.36(i) or § 1024.38(b)(1)(vi)" (emphasis added) (footnote omitted); *see also Gilliam v. Trustee of Lou Ester Ross Revocable Trust*, 955 F.3d 1117, 1121 (9th Cir. 2020) (Consumer Financial Protection Bureau has interpretive authority over the provisions of RESPA). Thus, ironically, a mortgage servicer who does what is required under § 1024.36 and confirms that an inquiring person is, in fact, a successor in interest places that person on the same footing as an original borrower, with same rights as a borrower to pursue a § 1024.35 claim. But a servicer who fails to investigate and/or simply ignores a person identifying himself as a successor in interest leaves that person without the same remedy as a borrower.

Not only does that failure to investigate and confirm leave a potential successor in interest without the same rights as a borrower under § 1024.36(i), but some courts have opined that a self-identified successor in interest who has not obtained confirmation from the servicer also cannot bring a claim under § 1024.35. These courts have dismissed § 1024.35 claims because the plaintiff failed to allege the servicer's explicit confirmation conferring the status of borrower. *Sharp v. Deutsche Bank Nat'l Trust*, No. 14-CV-369-LM, 2015 WL 4771291, at *7 (D.N.H. Aug. 11, 2015) ((unconfirmed) successor in interest was not a borrower for purposes of §§ 1024.35 and 1024.36); *Parsley v. Rushmore Loan Management Services LLC*, No. 3:23-0525, 2024 WL 712873, at *5-6 (S.D. W.Va. Feb. 21, 2024) (dismissing RESPA claim because plaintiff alleged only that she had submitted all the documentation the servicer had requested of her, but failed to allege she was either a borrower or a confirmed successor in interest).

Other courts have declined to impose such a harsh and counter-intuitive consequence on a plaintiff credibly alleging to be a successor in interest but who was not confirmed by the loan servicer. These courts have allowed such unconfirmed plaintiffs to proceed with claims under § 1024.35 (*not* under § 1024.36) based on either or both: (1) the loan servicer's implicit acknowledgment of the successor in interest's status; and/or (2) the (unconfirmed) successor in interest appearing to have a rightful claim to succession under state law. As to the first possibility, a loan servicer's failure to engage with the self-identified successor in interest as

1    required by § 1024.36 does not necessarily preclude the successor in interest's standing to bring a

2    RESPA claim under § 1024.35.  In other words, a self-identified successor in interest may

3    rightfully be entitled to the status of a borrower within the meaning of Regulation X, whether or

4    not the loan servicer explicitly conveys "confirmation" to the successor in interest.  A loan

5    servicer's actions may implicitly signal confirmation of a successor in interest's status, and such

6    implicit confirmation may be sufficient to allow a RESPA § 1024.35 claim to proceed.  For

7    example, the court in *Faria* found that plaintiffs' plausible allegation that the loan servicer

8    considered plaintiffs to be successors in interest adequate because the loan servicer had "treated

9    them as such," by mailing notices of mediation and sale to plaintiffs.  569 F. Supp. 3d at 98.

10            In *Nolan v. U.S. Bank National Ass'n*, No. 2:23-cv-01443-RMG-MGB, 2024 WL

11    1838602 (D.S.C. Apr. 10, 2024), *report and recommendation adopted*, 2024 WL 1836574

12    (D.S.C. Apr. 26, 2024), the court denied a motion to dismiss a RESPA error resolution claim

13    "[b]ecause Defendants do not specifically dispute Plaintiff's status as a confirmed successor in

14    interest, and because Plaintiff may meet this definition" according to her allegation that her

15    deceased mother had deeded her the mortgaged property.  *Id.* at *4 (footnote omitted); *see also*

16    *Weber v. Wells Fargo Bank, N.A.*, No. 3:20-cv-48, 2021 WL 833949, at *7 (N.D. W.Va. Mar. 4,

17    2021) (plaintiff's allegation she was administrator and inheritor of her deceased husband's estate

18    conferred the status of a confirmed successor in interest and therefore plaintiff's complaint stated

19    a plausible RESPA claim); *Barzelis v. Flagstar Bank, F.S.B.*, 784 F.3d 971, 978 (5th Cir. 2015)

20    (reversing summary judgment on widow's RESPA claim because the district court had failed to

21    account for the legal effect of husband's death under Texas law; the husband was sole signatory

22    on the mortgage loan but the widow "as successor to her husband's interest in the property

23    subject to their community debt, was the successor-debtor on the Note and was the legal

24    borrower" (footnote omitted)); *cf. In re Ditech Holding Corp.*, 2024 WL 61598, at *11 (Bankr.

25    S.D.N.Y.  Jan. 4, 2024) (without reference to defendant's confirmation or absence thereof, the

26    court held that plaintiff was not a confirmed successor in interest because she had not signed the

27    note securing the mortgage *and* because the property owners had not transferred their ownership

28    interest in the property to her); *Albra v. Selene Finance*, No. 2:18-cv-00018, 2018 WL 6603645,

1    at *4 (D. Nev. Dec. 17, 2018) (plaintiff who had no ownership interest in the property and no

2    document reflecting a transfer of interest to him failed to show that he was entitled to

3    confirmation of his status as a successor in interest), *aff'd*, 298 F. App'x 139 (mem.) (9th Cir.

4    Mar. 13, 2020); *McComas v. PHH Mortgage*, Civ. No. 1:22-cv-00435-CL, 2022 WL 2786316, at

5    *2 (D. Ore. July 15, 2022) (where ownership of a mortgaged property passed to a child "by right

6    of survivorship" it is unclear why the child "would not have also inherited the Loan that

7    encumbered the property").

8        Here, plaintiff's complaint alleges that defendant neither explicitly confirmed nor

9    explicitly denied plaintiff's status as a successor in interest, and indeed that defendant failed to

10   engage in the process required by 12 C.F.R. § 1024.36(i).  However, plaintiff also alleges that: (1)

11   he "is the rightful and lawful owner of the property" by way of inheritance, ECF No. 1 at 6 ¶ 1;

12   (2) he resides at the property and has resided there for "years prior to the foreclosure," *id.*, *id.* at

13   10 ¶ 24; and (3) he "had to pay additional interest & late charges and fees associated with

14   inspection on the property which servicers normally do every month and is standard procedure

15   when foreclosure activity is initiated," ECF No. 7 at 8.  Given these alleged facts, the caselaw

16   supports the viability of plaintiff's claim.  Under the reasoning of *Faria*, the defendant's demand

17   and/or acceptance of payments of additional interest, late charges, and fees from plaintiff –

18   plausibly on the basis of plaintiff's ownership of the property and/or his residence there – may

19   well mean that defendant has at least implicitly acknowledged plaintiff's status as a confirmed

20   successor in interest and hence as a borrower.  Under *Nolan* and *Weber*, mere allegations that the

21   plaintiff is a successor in interest regardless of whether explicit confirmation is alleged to have

22   occurred is sufficient.  Thus, plaintiff's claim can proceed because he has sufficiently pled that he

23   may be entitled to the status of a confirmed successor in interest.  And according to *Barzelis*,

24   plaintiff's claim may proceed because the legal effect of Michael S.'s death under California's

25   survival statute is that plaintiff, as either a "beneficiary of the decedent's estate" under Cal. Civ.

26   Proc. Code § 377.10[8] or as "decedent's successor in interest" under Cal. Civ. Proc. Code §

27   _____

28       [8]  A "beneficiary of the decedent's estate" is a person who succeeds to a cause of action
     under a will, or if the decedent was intestate it is a person who succeeds to a particular item of
     property that is the subject of a cause of action.  Cal. Civ. Proc. Code § 377.10(a) & (b).

377.11,[9] is authorized to bring suit under Cal. Civ. Proc. Code § 377.20(a).[10]  A California successor in interest may pursue survival claims if the decedent died intestate and has no "personal representative" such as an estate administrator.  *Estate of Elkins v. Pelayo*, No. 1:13-CV-1483, 2020 WL 2571387, at * 5 (E.D. Cal. May 21, 2020); *see also Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1054 (9th Cir. 2018) ("California's survivorship law is expansive – permitting either a personal representative or successor in interest to bring a claim on behalf of a decedent").

There is another plausible and independent basis for plaintiff's claim alleging a violation of § 1024.35.  Defendant is plainly wrong in arguing that the complaint fails to allege that plaintiff was appointed administrator of Michael S.'s estate.  Quite the contrary, plaintiff brings this lawsuit in his capacity as administrator of Michael S.'s estate.

Plaintiff's capacity as administrator may be sufficient to confer the status of borrower and is actually consistent with defendant's insistence that it is Michael S. who is the borrower. Defendant claims that it was Michael S. who "defaulted on [the] mortgage loan after his death," ECF No. 4 at 6, and the Notice of Default recorded some sixteen months after Michael S.'s death identifies Michael S. as the borrower who is in default, ECF No. 1 at 41.  To the extent that Michael S. could be deemed to be in post-death default, it was his estate that was in default.  *See Wilson*, 48 F. Supp. 3d at 798 (foreclosure action identified borrowers' estate as defendant); *see also Valdez v. Downey Savings and Loan Ass'n*, No. C 06-2541 JF (HRL), 2007 WL 9728991 (N.D. Cal. Oct. 17, 2007) (allowing substitution of estate for deceased plaintiff; court subsequently awarded damages to estate for RESPA violations, at 2008 WL 4452116 (N.D. Cal. Oct. 3, 2008)); *Bell v. Selene Finance, LP*, No. 6:23-cv-03042, 2025 WL 92944, at *3 (W.D. Mo.

---

[9] A "decedent's successor in interest" is "the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of the cause of action."  Cal. Civ. Proc. Code § 377.11.

[10] "Except as otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." Cal. Civ. Proc. Code § 377.20(a); *see also* Cal. Civ. Proc. Code § 377.30 ("A cause of action that survives the death of the person … passes to the decedent's successor in interest … and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest").

16

1    Jan. 14, 2025) (denying summary judgment and holding that question whether plaintiff brings his

2    RESPA claims in his individual capacity, or in his capacity as trustee, will be resolved at trial

3    before submitting the claims to the jury).

4        A RESPA claim that survives the death of a RESPA borrower may be pursued by the

5    borrower's estate administrator.  An estate administrator may submit QWRs to the servicer on the

6    topics listed in 12 C.F.R. § 1024.35(b) subject to the same requirements as a borrower's QWRs,

7    and the administrator is entitled to receive response according to the procedures required in 12

8    C.F.R. § 1024.35.  *See Wilson*, 48 F. Supp. 3d at 802-05 (estate administrator stated plausible

9    claim for violation of § 1024.35 in that loan servicer's response to administrator allegedly

10   contained incorrect information and was based on inadequate investigation).  An estate

11   administrator's QWR may fail to comply with § 1024.35 for the same reasons any other QWR

12   would fail.  *See Marasigan v. MidFirst Bank*, No. 23-cv-00634-H-MSB, 2023 WL 3470128, at *4

13   (S.D. Cal. May 15, 2023) (dismissing claim because complaint failed to allege the plaintiff estate

14   administrator submitted any *written* notice of error to the loan servicer and thus failed to allege

15   the servicer "had any obligations under 12 C.F.R. § 1024.35"); *Estate of Coineandubh*, 2019 WL

16   3859726, at *4 (estate administrator failed to state RESPA claim because administrator's requests

17   were related to loan terms, rather than loan servicing).  The estate administrator may therefore

18   submit a QWR about any of the topics listed in § 1024.35(b) and may bring a claim if the servicer

19   fails to respond.  *See Wilson*, 48 F. Supp. 3d at 802-05.  The court expresses no opinion at this

20   juncture whether the catch-all in § 1024.35(b)(11) might encompass an estate administrator's

21   QWR about confirming a successor in interest.

22       Although the fifth cause of action is imprecisely pled, it is not as indiscernible as the

23   defendant argues.[11]  While it lacks clarity, the fifth cause of action alleges a claim for violation of

---

24       [11]  Defendant's motion similarly contains conclusory arguments and inaccurate
25   statements.  For example, defendant argues that § 1024.35 does not require servicers to provide
     written information to a successor in interest, ECF No. 4 at 12, without acknowledging that
     RESPA does require servicers to provide information to confirmed successors in interest, and that
26   confirming the status of a successor in interest is also a servicer's duty.  Elsewhere defendant
     argues that plaintiff "pleads no facts showing that he is the administrator of his deceased father's
27   estate," *id*. at 6, and that plaintiff "is not the real party in interest," *id*. at 9, yet defendant
     acknowledges plaintiff's allegations "that he 'owned the property as he was bequeathed the
28   Subject Property and has lived within [sic] Subject Property years prior to foreclosure,'" *id*. at 8-

17

1    12 C.F.R. § 1024.35 that is intelligible enough to inform defendant of the substance of the claim.

2    *See Gregory Village Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 896 (N.D. Cal.

3    2011) (denying motion for a more definite statement of claim).  Defendant does not dispute nor in

4    any way address plaintiff's allegation that plaintiff submitted one or more written requests

5    regarding the servicing of the mortgage loan which may have satisfied the requirements for a

6    QWR under § 1024.35.

7         The complaint alleges that plaintiff sues "as the Administrator of the Estate of Michael S.

8    Shiflett" and that plaintiff is "the rightful successor in interest in the Subject Property by way [of]

9    inheritance."  ECF No. 1 at 6 ¶ 1.  And, as noted, plaintiff's capacity as the administrator in which

10   he submitted his written requests and now brings his § 1024.35 can be sufficient to confer the

11   status of "borrower" for this claim.  These allegations are consistent with defendant's insistence

12   that it is Michael S. who is the borrower.  Thus, the court construes the fifth cause of action to

13   allege a § 1024.35 claim based on: (1) plaintiff's capacity as administrator and/or successor in

14   interest under the California survivorship statute, and (2) plaintiff's status as a successor in

15   interest within the meaning of § 1024.31 of RESPA's Regulation X.

16        For these reasons, defendant's motion to dismiss the fifth cause of action must be denied.

17        <u>Sixth Cause of Action (RESPA Regulation X, 12 C.F.R. § 1024.38)</u>

18        The sixth cause of action alleges that defendant failed to perform its due diligence to

19   confirm plaintiff's identity and ownership interest in the property and failed to evaluate or

20   provide information about loss mitigation, in violation of RESPA's Regulation X, at 12 C.F.R. §

21   1024.38.  Plaintiff seeks damages and rescission of the mortgage loan, again incorrectly citing

22   TILA's remedial provisions.  Defendant seeks to dismiss this RESPA claim on the grounds that

23   the complaint fails to allege facts showing that plaintiff initiated a probate case or was appointed

24   administrator of his father's estate.  Defendant also argues that the complaint fails to allege facts

25   showing that defendant received notice of Michael S.'s death yet failed to promptly facilitate

26   communication with plaintiff regarding the property (including failing to inform him what

27   documents were reasonably required for the defendant to confirm that plaintiff was a successor in

28   _____
     9.

18

interest and failing to confirm that plaintiff was a successor in interest).  ECF No. 4 at 15.

Defendant further maintains that the complaint fails to allege that defendant has no policies and

procedures reasonably designed to ensure that it could "achieve these objectives."  Plaintiff

responds that Title 12 of the Code of Federal Regulations requires a loan servicer to "provide the

successor in interest written information with respect to any loan" and to "confirm the potential

identity and ownership interest in the property."  ECF No. 7 at 11.

      <u>Analysis</u>.  12 C.F.R. § 1024.38(b) requires servicers to maintain policies and procedures

that are reasonably designed to meet loan servicing objectives, including in relevant part:

(1) providing borrowers, owners, and assignees with information about their mortgage loans, (2)

facilitating communications with potential or confirmed successors in interest upon receiving

notice of the death of a borrower, and (3) providing information about loss mitigation.

Defendant's arguments for dismissal are unpersuasive, because the complaint does allege plaintiff

is successor in interest and administrator of Michael S.'s estate and that he attempted without

success to contact defendant.  The complaint also at least implicitly alleges that defendant's

alleged failures to meet RESPA requirements imply an absence of policies designed to "achieve

these objectives."  Thus, dismissal on the grounds asserted by the defendant must be denied.

      Some district courts in the Ninth Circuit have found that there is no private right of action

for violations of § 1024.38.[12]  Curiously, defendant has not presented this argument as grounds

for dismissal.  Because the Ninth Circuit Court has not ruled on this question, it is not yet certain

that plaintiff "cannot possibly win relief" on a § 1024.38 claim.  Further, the parties have not

---

[12] "[A]t least some courts within this [Ninth] Circuit have found" that § 1024.38 does not create a private right of action.  *Warren*, 671 F. Supp. 3d at 1049 (citing district court cases from the Central District of California and the Western District of Washington); *see also Moore v. Wells Fargo Bank, N.A.*, No. 22-cv-07310-AMO, 2023 WL 5538268, at *4 (N.D. Cal. Aug. 26, 2023) (rejecting private cause of action under § 1024.38); *Guzman v. USAA Federal Savings Bank*, Case No. 3:23-CV-1193, 2024 WL 1973096, at *8 (N.D. Ohio May 3, 2024) (Consumer Financial Protection Bureau's official interpretation is that § 1024.38 does not provide a private cause of action, yet § 1024.38 may be relevant to claim under another provision of Regulation X alleging lack of due diligence).  As in *Warren*, plaintiff here cites no case law or other authority indicating that he may assert a claim for a violation of § 1024.38.  The Ninth Circuit Court has not ruled on this question, although it has an opportunity to do so in the currently pending appeal of *Calcut v. Paramount Residential Mortgage Group Inc.*, CV-22-01215-PHX-JJT, 2024 WL 233175, at *4 (D. Ariz. Jan. 22, 2024).  *See* Appellants' Opening Brief at 45-47, *Calcut v. Paramount Residential Mortgage Group Inc.*, No. 24-764 (9th Cir. June 5, 2024).

19

1  briefed the issue.  Accordingly, the court does not resolve that question here.

2          Overview of California Nonjudicial Foreclosures and HBOR (Counts 1 – 3)

3          The complaint's first three causes of action allege that defendant failed to comply with

4  several provisions of the California Homeowner Bill of Rights (HBOR).

5          California's nonjudicial foreclosure procedure is described generally in *Herrejon v.*

6  *Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1199-1200 (E.D. Cal. 2013).  "[A] lender

7  may pursue non-judicial foreclosure upon default with a deed of trust with a power of sale

8  clause."  *Id*. at 1199.  Authorized agents may record a notice of default on behalf of the

9  mortgagee.  *Id*. (citing § 2924(a)(4)).  A deed that transfers the foreclosed property and recites

10  that all statutory notice requirements and procedures have been satisfied, creates a rebuttable

11  presumption "that the sale has been conducted regularly and properly."  *Id*. at 1200 (quoting

12  *Moeller v. Lien*, 25 Cal. App. 4th 822, 831, 30 Cal. Rptr. 2d 777 (1994)).  A claim challenging the

13  foreclosure must allege facts describing specific statutory violations.  *Id*.

14          The HBOR is "a complex set of enactments focused specifically on residential mortgages"

15  that is "[l]ayered on top of [a] foundational scheme of statutory, common law and equitable rights

16  and remedies" and "principally designed to ensure that as part of the nonjudicial foreclosure

17  process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss

18  mitigation options, if any, offered by or through the borrower's mortgage servicer."  *Morris v.*

19  *JPMorgan Chase Bank, N.A*. (2022) 78 Cal. App. 5th 279, 295, 293 Cal. Rptr. 3d 417, 441

20  (citations and internal quotation marks omitted).  California Civil Code §§ 2924 through 2924k

21  provide a comprehensive scheme with a threefold purpose: "(1) to provide the

22  creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting

23  debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to

24  ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide

25  purchaser."  *Matson v. S.B.S. Trust Deed Network* (2020) 46 Cal. App. 5th 33, 40, 259 Cal. Rptr.

26  3d 526, 532 (internal quotation marks and citation omitted).  "A party can move in equity to set

27  aside a nonjudicial foreclosure sale if there are irregularities in the notice or procedure of the

28  sale."  *Id.* at 41, 259 Cal. Rptr. 3d at 532.  HBOR has "a carefully calibrated enforcement

mechanism" that includes pre-foreclosure injunctive relief, post-foreclosure relief of actual

economic damages up to a limit of "the greater of trebled damages or $50,000 where the violation

was intentional or reckless or resulted from willful misconduct," and attorney fees and costs.

*Morris*, 78 Cal. App. 5th at 295, 293 Cal. Rptr. 3d at 441 (citations and internal quotation marks

omitted); *see also In re Hager*, 651 B.R. 873, 880-83 (E.D. Cal. 2023) (discussing 2020 changes

in California statutes affecting finality of nonjudicial foreclosure sales); *In re Spikes*, 662 B.R.

704, 707 (E.D. Cal. 2024) (after the 2020 changes, "[n]oncompliance with the notice regime

blocks finality indefinitely and leaves title with the trustor" (citation omitted)).

      The HBOR requires another parsing of the term "successor in interest."  The California

Court of Appeal has opined that:

> The term "successor in interest" is not specifically defined in this statutory
> scheme.  The general definition of "successor in interest" is: "Someone who
> follows another in ownership or control of property.  A successor in interest retains
> the same rights as the original owner, with no change in substance."  (Black's Law
> Dict. (11th ed. 2019) p.1732, col. 2; see *Otay Land Co., LLC v. U.E. Limited, L.P.*
> (2017) 15 Cal. App. 5th 806, 860-861, 225 Cal. Rptr. 3d 119 (relying on the
> Black's Law Dictionary definition of successor in interest); *Perez v. 222 Sutter St.
> Partners* (1990) 222 Cal. App. 3d 938, 948, fn. 8, 272 Cal. Rptr. 119 [same].)

*Shetty v. HSBC Bank USA, N.A.* (2023) 91 Cal. App. 5th 796, 801, 308 Cal. Rptr. 3d 625, 629.

The plaintiff in *Shetty* was a successor in interest by virtue of having purchased the property at a

foreclosure sale.  *Id*.  *Shetty* explicitly rejected the loan servicer's argument – an argument also

made by defendant here using the same terminology – that the terms of the deed of trust were

controlling and that the purchaser had no rights as a "'stranger' to the loan." *Id*. at 802, 308 Cal.

Rptr. 3d at 629-630.  Rather, *Shetty* holds that "the statute seems to specifically contemplate a

stranger to the loan – i.e. not the original borrower – reinstating and taking over the mortgage.  []

Under the plain language, [plaintiff] is a successor in interest to the mortgaged property and thus

had a right of reinstatement under section 2924c."  *Id*.  According to *Shetty*'s reasoning, an heir

who inherits a property is a successor in interest for purposes of the HBOR and has a right to

reinstate a mortgage loan under § 2924c.

      The complaint's first three causes of action allege defendant's failures to comply with

HBOR provisions dictating what a mortgage servicer must do: (1) before recording a notice of

1  default, (2) with respect to the notice of default itself, and (3) after a notice of default is recorded.

2  Each are addressed below.

3          First Cause of Action (California Civil Code § 2923.5 and § 2923.55(c))

4          The first cause of action alleges violations of two California statutes.  Each have

5  somewhat different requirements.  The first alleged violation is that defendant failed to act with

6  due diligence to contact "the borrower" to assess the borrower's financial situation and explore

7  options to avoid foreclosure before recording the Notice of Default, and that this omission

8  violated California Civil Code § 2923.5.  ECF No. 1 at 9.  The second is that the Notice of

9  Default failed to attach a statutorily-required and accurate notice of verification, although as

10  discussed *infra* the complaint misidentifies the relevant statute.  *Id*. at 8.

11          Defendant argues for dismissal on the grounds that plaintiff is not a borrower within the

12  meaning of Civil Code § 2920.5(c)(1).  Defendant inaccurately asserts that the complaint fails to

13  allege plaintiff initiated a probate case or was appointed administrator of Michael S.'s estate.

14  ECF No. 4 at 9.  Defendant also argues, mistakenly, that any violation of § 2923.5 was not

15  material because defendant "had already assessed Borrower's financial situation and explored his

16  options to avoid foreclosure" and had "entered into an agreement with him to modify the Loan."

17  ECF No. 4 at 10.  This argument does not refer to any assessment or agreement with plaintiff or

18  with the estate of Michael S., but rather to a loan modification agreement that Michael S. and the

19  defendant entered into effective December 18, 2019, which modified the mortgage before

20  Michael S.'s death on February 11, 2021.  ECF No. 5 at 4-8.  Defendant indeed claims that it was

21  Michael S. who defaulted, and that the default occurred after Michael S.'s death.  ECF No. 4 at 6.

22  Defendant does not claim to have made any assessment of *plaintiff's* financial situation and of

23  *plaintiff's* options to avoid foreclosure, whether on plaintiff's own behalf or on behalf of Michael

24  S.'s estate.

25          Plaintiff's response "re-affirms and asserts he was never contacted PRIOR to the

26  foreclosure by his loan servicers to discuss foreclosure avoidance measures prior to the

27  foreclosure," even though he was available by phone and mail.  ECF No. 7 at 8, 10 (emphasis in

28  original).  Plaintiff argues this was an "abuse and blatant disregard for Plaintiff's rights to get a

1  fair loan modification review." *Id*. at 9.  Plaintiff claims he had experienced "a substantial change

2  in financials" which defendant failed to assess.  *Id*. at 10.  Plaintiff maintains that the Notice of

3  Default falsely represented that the borrower had been contacted, *id*. at 8, 9, and he also alleges

4  that the Notice of Default did not attach a verification of accuracy as required by California Civil

5  Code § 2015.5(a).  ECF No. 1 at 8.  Plaintiff's point appears to be that a process of assessing his

6  financial situation did occur, but only *after* the foreclosure, and that he thereby "suffered

7  damages" incurred by "faxing and mailing documents, transportation to the non-profit center

8  assisting them with the application submitted and loss of income suffered in taking time off work

9  in order to come to an agreement" as well as having to pay additional interest, late charges, and

10  fees associated with inspection of the property.  ECF No. 7 at 7, 9, 10.

11      Analysis.  As noted, the first cause of action relies on California Civil Code sections

12  2923.5 and 2923.55(c).  Section 2923.5[13] requires a mortgage servicer or trustee to initiate contact

13  with borrowers before recording any notice of default, and to explore options to avoid

14  foreclosure.  Plaintiff is correct that a notice of default must be accompanied by a declaration that

15  the servicer has made this required contact (or is excused from doing so), but plaintiff cites an

16  incorrect statute.  He cites California Civil Code § 2015.5(a), which is generally applicable to

17  declarations of compliance, but the more specifically applicable statute is at California Civil Code

18  § 2923.55(c).  A declaration under § 2923.55(c) must indicate that "the mortgage servicer has

19  contacted the borrower, has tried with due diligence to contact the borrower as required by this

20  section, or that no contact was required because the individual did not meet the definition of

21  'borrower' pursuant to subdivision (c) of Section 2920.5."  Due diligence efforts must include

---

22      [13]  If the loan provider is a federally chartered savings bank, the Home Owners' Loan Act

23  (HOLA), 12 U.S.C. § 1461, may preempt Cal. Civ. Code § 2923.5.  *Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291 (S.D. Cal, 2011).  However, "[i]n *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 110 Cal. Rptr. 3d 201 (2010), the California Court of Appeal opined that

24  'section 2923.5 is not preempted by federal banking regulations because it is, or can be construed to be, very narrow.'"  *Hutchful v. Wells Fargo Bank, N.A.*, 471 F. App'x 693, 694 (9th Cir. 2012).

25  Defendant does not raise a preemption issue, and its name does not appear on a list of chartered national banks published by the Office of the Comptroller of the Currency.  *See*

26  https://www.occ.treas.gov/topics/charters-and-licensing/financial-institution-lists/index-financial-institution-lists.html.  The court therefore proceeds at this juncture on the understanding that

27  HOLA does not preempt the complaint's first cause of action, because defendant is not a chartered national bank and/or because § 2923.5 is narrowly construed.

28

1    first class mail, telephone (at least three times at different hours and on different days), and finally

2    certified mail, as well as providing a toll-free telephone number to a live representative during

3    business hours and a link on the servicer's internet website.  Cal. Civil Code § 2923.55(f).

4         Sections 2923.5 and 2923.55(c) are closely related but independent statutes and are more

5    properly pleaded as separate causes of action.  Each of these two provisions may independently

6    provide a basis for a cause of action.  *See Ghalehtak v. Fay Servicing, LLC*, 304 F. Supp. 3d 877,

7    887 (N.D. Cal. 2018) (construing claim brought under § 2923.5 as actually alleging a claim

8    pursuant to § 2923.55).  The complaint's first cause of action states an actionable claim for

9    violation of § 2923.5 and also plausibly alleges an actionable claim for violation of § 2923.55(c).

10        California Civil Code § 2923.5.  Defendant argues that it complied with § 2923.5, based

11    on unspecified events which may have transpired before Michael S.'s death.  ECF No. 4 at 10.

12    According to defendant, it was not required to make any further efforts to help Michael S. (or his

13    estate, or his successor in interest) avoid foreclosure.  Whether or not Michael S. was in default

14    before entering into the 2019 loan modification agreement is unclear on this record, but it is

15    apparent that Michael S. made payments after the loan modification agreement took effect.  The

16    Notice of Default states the default did not occur until December 1, 2020, ECF No. 1 at 40; and

17    defendant's own motion also represents that Michael S. did not default on the mortgage payments

18    until "after his death," ECF No. 4 at 6.

19        Moreover, a debtor's payments made according to the terms of a loan modification

20    agreement serve to cure any previous default.  *See Orcilla v. Big Sur, Inc*. (2016) 244 Cal. App.

21    4th 982, 1000, 198 Cal. Rptr. 3d 715, 730 (original default was uncured because the debtor failed

22    to make monthly payments required by their loan modification agreement and therefore another

23    notice of default was not required).  Payments that Michael S. made after the loan was modified

24    on December 18, 2019 and up to December 1, 2020 would have cured an earlier default.  The

25    relevant default apparently occurred only shortly before Michael S.'s death on February 11, 2021.

26    Michael S. himself could not have cured that default, but his estate and/or his successor in interest

27    might have been able to cure it.  And, indeed, plaintiff alleges changed circumstances which

28    might have allowed him to avoid foreclosure, thus clearly refuting defendant's argument that its

                                        24

1    alleged failure to comply with § 2923.5 before recording the June 28, 2022 Notice of Default is

2    immaterial.  *See Cardenas v. Caliber Home Loans, Inc*., 281 F. Supp. 3d 862, 869-70 (N.D. Cal.

3    2017) (a material violation of Civil Code § 2924.17 is one that affects loan obligations or causes

4    plaintiff to suffer harm that plaintiff would not have suffered otherwise).

5            Defendant cites no authority for its position that the process which resulted in the 2019

6    loan modification agreement excused defendant from complying with the process required by §

7    2923.5 after Michael S.'s death.  *Shetty* explicitly rejected defendant's argument that it was not

8    obligated to contact plaintiff or explore his options to avoid foreclosure because plaintiff was not

9    the borrower, "is not the real party in interest," and "is a stranger to the loan."  ECF No. 4 at 8-9.

10   Even if Michael S. was the borrower and the signatory to the loan, *Shetty* holds that § 2923.5

11   nevertheless required defendant to contact and explore foreclosure avoidance with plaintiff as

12   Michael S.'s successor in interest, and perhaps also as Michael S.'s estate administrator.

13           There was a change in the available remedies for violations of § 2923.5 during the

14   relevant time period.  Until December 31, 2022, the only available remedy for violation of §

15   2923.5 was postponement of the foreclosure sale, as provided in California Civil Code § 2920.7

16   (repealed effective December 31, 2022).  *See Mabry v. Superior Court*, 185 Cal. App. 4th 208,

17   235 (2010) ("the *only* remedy provided is a postponement of the sale before it happens"

18   (emphasis in original)); *Martinez v. America's Wholesale Lender*, 446 F. App'x 940, 943 (9th Cir.

19   2011) (affirming dismissal of § 2923.5 claim because foreclosure sale had already occurred).

20   Beginning January 1, 2023, California Civil Code § 2924.19(b) (effective January 1, 2023)

21   provides that mortgage servicers may be liable "to a borrower" for "actual economic damages

22   pursuant to Section 3281, resulting from a material violation of Section 2923.5, 2924.17, or

23   2924.18 … where the violation was not corrected and remedied prior to the recordation of the

24   trustee's deed upon sale."  The maximum award is "the greater of treble actual damages or

25   statutory damages of fifty thousand dollars ($50,000)."  *Id*.

26           In the usual case, a change in a remedial statute might apply only to violations that

27   occurred after the remedial statute was changed.  According to this logic, defendant allegedly

28   violated § 2923.5 by failing to make contact before the Notice of Default was recorded on June

25

1   28, 2022 and since § 2920.7 was still in effect at that time, plaintiff's only remedy would be

2   postponement of the foreclosure sale.  Also according to this logic, plaintiff's § 2923.5 claim

3   would be dismissed because postponement of the foreclosure sale is no longer possible.

4          However, § 2920.19(b) holds open a window for possible correction of the initial

5   underlying violation of § 2923.5, until the trustee's deed upon sale is recorded.  The trustee's

6   deed upon sale was not recorded until January 31, 2023.  ECF No. 5 at 16.  Defendant could have

7   corrected its alleged violation of § 2923.5 at any time up to January 31, 2023.  Defendant's

8   alleged failure to correct its initial violation means that the relevant events in this case straddle the

9   time that § 2920.7 was in effect and the time since § 2920.19(b) has come into effect.  Therefore,

10  plaintiff has an available remedy for the alleged violation of § 2923.5 and defendant's motion to

11  dismiss this claim must be denied.

12         <u>California Civil Code § 2923.55(c)</u>.  The first cause of action also alleges violation of

13  California Civil Code Section 2923.55(c).  Plaintiff contends that a notice of default must be

14  accompanied by a verification affirming that the borrower has been contacted to assess options to

15  avoid foreclosure.  ECF No. 1 at 8 ¶ 13, *id*. at 9-10 ¶¶ 18-20.  This allegation is essentially correct

16  insofar as California Civil Code § 2923.55(c)[14] requires a declaration indicating that "the

17  mortgage servicer has contacted the borrower, has tried with due diligence to contact the

18  borrower as required by this section, or that no contact was required because the individual did

19  not meet the definition of 'borrower' pursuant to subdivision (c) of Section 2920.5."

20         The Notice of Default recorded in the Sacramento County Recorder's Office does attach a

21  "California Declaration of Compliance (Civil Code § 2923.55(c))" [hereinafter the "§ 2923.55(c)

22  Declaration"].  ECF No. 1 at 41.  The § 2923.55(c) Declaration certifies and represents that the

23  mortgage servicer "has exercised due diligence to contact the Borrower pursuant to California

24  Civil Code § 2923.55(f) to 'assess the Borrower's financial situation and explore options for the

25  Borrower to avoid foreclosure.'  Thirty (30) days, or more, have passed since these due diligence

26  _____

27  [14] The complaint cites the wrong statute: California Civil Code § 2015.5(a).  ECF No. 1 at
    8.  Section 2015.5(a) applies generally to certifications or declarations that must be made when
28  evidence is produced subject to penalty of perjury.  The correct statute is California Civil Code §
    2923.55(c), an HBOR provision specific to declarations accompanying HBOR notices of default.

                                            26

1    efforts were satisfied." ECF No. 1 at 41. No specific due diligence efforts are described. The

2    Section 2923.55(c) Declaration further states that the mortgage servicer "has not denied the

3    borrower a forbearance request on or after 8/31/2020." ECF No. 1 at 41. "Michael S. Shiflett" is

4    named as the borrower. *Id.*

5        The first cause of action inarticulately but plausibly alleges that the § 2923.55(c)

6    Declaration attached to the Notice of Default was materially inaccurate and/or misleading, and

7    that plaintiff suffered damages because defendant failed to contact him and assess options to

8    avoid foreclosure. *See Travis v. Nationstar Mortgage, LLC*, 733 F. App'x 371, 375-76 (9th Cir.

9    2018) (remanding to allow plaintiffs to amend insufficiently pled § 2923.55 claim; plaintiffs had

10   failed to allege how communications with loan servicer might have allowed them to avoid or

11   reduce their damages); *Chin King Wong v. Wells Fargo Bank, N.A.*, 2:18-cv-02811-TLN-CKD,

12   2020 WL 7024234, at *10 (E.D. Cal. Nov. 30, 2020) (materiality sufficiently pled by allegation

13   that foreclosure sale might have been avoided). Material violations of § 2923.55(c) are actionable

14   and compensable even after the trustee's deed upon sale has been recorded. Cal. Civ. Code §

15   2924.12(b) ("If the court finds that the material violation [of § 2923.55] was intentional or

16   reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee,

17   beneficiary, or authorized agent, the court may award the borrower the greater of treble actual

18   damages or statutory damages of fifty thousand dollars ($50,000)."); *id*. at § 2924.12(h) (the court

19   may also award reasonable attorney's fees and costs to a prevailing borrower);[15] *see also Santana*

20   *v. BSI Financial Services, Inc*., 495 F. Supp. 3d 926, 940 (S.D. Cal. 2020) (denying motion to

21   dismiss § 2923.55 claim).

22       The first cause of action states an actionable claim for violation of § 2923.55(c). *See*

23   *Ghalehtak*, 304 F. Supp. 3d at 887. Defendant's motion to dismiss the first cause of action as to

24   this statute must be denied.

25   ////

26   _____

27   [15] Section 2924.12 was amended effective January 1, 2023. Section 2924.12(b) & (h) are
     the same in the current version of § 2924 and in the version effective January 1, 2019 to
28   December 31, 2022.

1    <u>Second Cause of Action (California Civil Code § 2924(a)(1))</u>

2        The second cause of action alleges that the Notice of Default is defective and voidable for

3    two reasons.  First, plaintiff claims that no notice or other messages were received at the

4    residence.  Second, plaintiff asserts that there was no prior record of a substitution of trustee

5    naming Quality Loan Service Corporation as trustee.  ECF No. 1 at 10.  Plaintiff maintains that

6    these omissions violate California Civil Code § 2924(a)(1), § 2924(a)(6), and § 2934a(a)(1).

7        Defendant argues that there is no private right of action under § 2924(a)(1), citing *Vikco*

8    *Ins. Servs., Inc. v. Ohio Indem. Co.* (1999) 70 Cal. App. 4th 55, 62-63.  Defendant further argues

9    that it complied with the statute in that the statute permits authorized agents to file notices of

10   default on behalf of mortgagees, and that a substitution of trustee was recorded on June 24, 2022.

11   ECF No. 4 at 11; ECF No. 5 at 14.  Plaintiff responds that § 2924(c) requires that certain notices

12   be mailed "to the Grantee," but that no such notices were ever received by plaintiff, and also

13   plaintiff was never contacted to assess his financial situation and explore options to avoid

14   foreclosure.  ECF No. 7 at 8.

15       <u>Analysis</u>.  The second cause of action presents two disjointed and unrelated allegations.

16   To begin, the allegation that the Notice of Default was not received at the residence is duplicative

17   of the claim alleged in the third cause of action.  It will be addressed there.  Second, the allegation

18   that a substitution of trustee was not timely recorded does not give rise to a cause of action for the

19   reasons stated here.  Also, the complaint captions the second cause of action with a citation to

20   Civil Code § 2924(a)(1).  Section 2924(a)(1)[16] sets forth certain required contents of a notice of

21   default.  The court has already determined that the first cause of action states a claim for violation

22   of Civil Code § 2823.55(c) regarding the adequacy of the certification attached to the Notice of

23   Default.  Section 2924(a)(1) adds only that notices of default must be filed in the recorder's

24   office, must identify the trustor, and must set forth the nature of the default, Civil Code §

25   2924(a)(1)(A)-(C), and if the default is curable, the notice of default must contain a statement

26   advising that the property may be sold without court action unless past due amounts are paid, *id*. §

27       [16] Unless otherwise noted, this analysis discusses the applicable version of California
     Civil Code § 2924, which was in effect from January 1, 2020 to December 31, 2022.

28

1    2924(a)(1)(D) (referencing Cal. Civ. Code § 2924c).[17]  The Notice of Default and its attached

2    certification appear to be at least facially compliant with § 2924(a)(1).

3      The implied allegation that defendant's agent was not authorized to conduct the

4    foreclosure sale falls under § 2924(a)(6), rather than § 2924(a)(1).  Section 2924(a)(6) provides:

5
6
7
8
9
> An entity shall not record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest.  An agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust shall not record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest.

10   The Supreme Court of California has explained the role of the trustee and the rights of the

11   beneficial holder in this manner:

12
13
14
> A deed of trust to real property acting as security for a loan typically has three parties:  the trustor (borrower), the beneficiary (lender), and the trustee.  The trustee holds a power of sale.  If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale. []

15
> The trustee starts the nonjudicial foreclosure process by recording a notice of default and election to sell.  []

16
17
18
19
> The trustee of a deed of trust is not a true trustee with fiduciary obligations, but acts merely as an agent for the borrower-trustor and lender-beneficiary.  While it is the trustee who formally initiates the nonjudicial foreclosure, by recording first a notice of default and then a notice of sale, the trustee may take these steps only at the direction of the person or entity that currently holds the note and the beneficial interest under the deed of trust – the original beneficiary or its assignee – or that entity's agent. []

20
21
22
23
> Defendants emphasize, correctly, that a borrower can generally raise no objection to assignment of the note and deed of trust.  A promissory note is a negotiable instrument the lender may sell without notice to the borrower.  The deed of trust, moreover, is inseparable from the note it secures.  But if the borrower defaults on the loan, only the current beneficiary may direct the trustee to undertake the nonjudicial foreclosure process.  []

24   *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal. 4th 919, 926-28, 365 P.3d 845, 850, 199

25   Cal. Rptr. 3d 66, 72-73 (citations and internal quotation marks omitted).  *Yvanova* concluded that

26

27     [17] Section 2924(a)(1) does not specifically require that the notice of default contain any language pertaining to a potential successor in interest, although Civil Code § 2924c(a)(1) does provide that the mortgagor "or their successor in interest" may pay the overdue amount to avoid
28   foreclosure, thus curing the default.

1   a California borrower "has standing to challenge the assignment of a mortgage on her home to the

2   extent that such a challenge is necessary to contest a foreclosing entity's status qua mortgagee."

3   *Id.* at 935, 365 P.3d at 856, 199 Cal. Rptr. 3d at 79 (citation and internal quotation marks

4   omitted).

5        *Yvanova*'s explanation of the distinct roles of beneficiary/lender and trustee/agent clarifies

6   the documentary record before the court.  To state a plausible violation of § 2924(a)(6), the

7   second cause of action must plausibly allege that defendant is not the holder of the beneficial

8   interest under the mortgage or deed of trust, or that § 2924(a)(6) was otherwise violated, and it

9   fails to do so.  *See Villegas v. Wells Fargo Bank, N.A.*, 18-cv-00813-PJH, 2018 WL 2387856, at

10  *6 (N.D. Cal. May 25, 2018) (dismissing § 2924(a)(6) claim for failing to allege that defendant

11  did not hold the beneficial interest under California law); *see also Kalnoki v. First American*

12  *Trustee Servicing Solutions, LLC* (2017) 8 Cal. App. 5th 23, 37-38, 214 Cal. Rptr. 3d 292, 302-

13  303 (Wells Fargo remained the beneficiary of the deed of trust even after corporate merger).

14  Here, Lakeview was identified as the lender (and therefore also the beneficiary) in both the

15  original loan document, ECF No. 1 at 21, and the loan modification agreement, ECF No. 5 at 4.

16  The trustee/agent identified in the original loan document was Old Republic Title Company ("Old

17  Republic"), ECF No. 1 at 22, and was changed to LoanCare, LLC (LoanCare) in the loan

18  modification agreement, ECF No. 5 at 4.  The Deed of Trust recorded on March 8, 2022 also

19  identifies Lakeview as beneficiary of the original and modified loan, while LoanCare continued

20  in the role of trustee/agent.[18]  ECF No. 1 at 36, 37.  A substitution of trustee was recorded on June

21  24, 2022, in which Lakeview substituted MTC Financial Inc. dba Trustee Corps (MTC) as trustee

22  under the Deed of Trust.  ECF No. 5 at 14.  The June 28, 2022 Notice of Default: (1) identifies

23  Lakeview as the "original beneficiary," (2) refers to the "present Beneficiary under [the] Deed of

24  Trust" without naming the "present Beneficiary," and (3) is signed by MTC as "Duly Appointed

25  Successor Trustee."  ECF No. 1 at 40.

26        [18]  According to documents from the Sacramento County Recorder's Office, the Mortgage
    Electronic Registration System (MERS) assigned all interest in the Deed of Trust to Lakeview,
27  ECF No. 1 at 36-37, indicating that Lakeview thereafter held the beneficial interest in the deed.
    *See Shetty v. HSBC Bank USA, N.A.* (2023) 91 Cal. App. 5th 796, 799, 308 Cal. Rptr. 3d 625,
28  627.  As in *Shetty*, MERS appears to have "played no role in the alleged wrongdoing."  *Id.*

1    The documentary record appears to confirm that Lakeview has been in the role of

2 beneficiary from the inception of the loan and throughout the nonjudicial foreclosure proceedings.

3 There does not appear to be any indication that a different beneficiary was ever substituted for

4 Lakeview, and indeed Lakeview does not dispute that it is the lender, beneficiary, and servicer of

5 Michael S.'s loan, nor does Lakeview dispute that it caused the nonjudicial foreclosure process to

6 be set in motion.  Lakeview has merely used a succession of different entities (Old Republic,

7 LoanCare, and MTC – but on this record not the entity identified in the complaint as "Quality

8 Loan Service Corporation") to act as its trustees/agents.  If Lakeview itself was never substituted

9 as beneficiary, § 2924(a)(6) would be inapplicable.

10    As for the alleged violation of § 2934a(a)(1), this provision states the requirements for

11 substituting a trustee.  *See Villegas*, 2018 WL 2387856, at *7.  A substitution must be

12 acknowledged by the beneficiary and recorded.  "Once recorded, the substitution shall constitute

13 conclusive evidence of the authority of the substituted trustee or their authorized agents to act

14 pursuant to this section []."  Cal. Civ. Code § 2934a(d)(4).  A sale conducted by a substituted

15 trustee is void if the operative "notice of sale" failed to provide the contact information for the

16 substituted trustee.  *Id*. § 2934a(e).  The notice of sale is to be posted as an internet announcement

17 within 48 hours of sale.  *In re Spikes*, 662 B.R. at 711 (citing Cal. Civ. Code § 2924m(e)(1)-(4)).

18    The complaint and the current documentary record fail to show how § 2934a(a)(1) was

19 violated, or how any such violation gives rise to a cause of action.  A "Substitution of Trustee"

20 naming "MTC Financial Inc. dba Trustee Corps" as substituted trustee was recorded in the

21 Sacramento County Clerk's Office on June 24, 2022.  ECF No. 5 at 14.  A "Notice of Trustee's

22 Sale" is attached to the complaint, in which the trustee is identified as "Trustee Corps," and also

23 as "MTC Financial Inc. dba Trustee Corps," with address and phone number.  ECF No. 1 at 43,

24 45.  The Notice of Trustee's Sale was recorded on October 5, 2022.  *Id*. at 43.  It states that the

25 property will be sold at auction on November 15, 2022.  *Id*.  The notice of sale is distinct from the

26 trustee's deed of sale.  *In re Spikes*, 662 B.R. at 710.  A copy of the trustee's deed of sale is also

27 in the record; it was recorded on January 31, 2023 and it also identifies MTC as the trustee.  ECF

28 No. 5 at 16.  Thus, the second cause of action fails to plausibly allege that MTC was not duly

31

1    authorized to conduct the foreclosure sale on behalf of defendant, and also fails to allege facts

2    demonstrating whether or how MTC might have failed to comply with procedural requirements.[19]

3        For all these reasons, the second cause of action fails to state any claim distinct from, and

4    independent of, the claims stated in the first and third causes of action.  Accordingly, defendant's

5    motion to dismiss the second cause of action must be granted.  Because the court cannot

6    determine whether amendment would be futile, plaintiff must be granted leave to amend the

7    second cause of action.

8            Third Cause of Action (California Civil Code § 2924.9)

9        The third cause of action alleges that defendant violated Civil Code § 2924.9 by failing to

10   mail a copy of the Notice of Default to the residence and otherwise failing to contact plaintiff

11   about alternatives to foreclosure.  ECF No. 1 at 11.  The complaint alleges that plaintiff lived at

12   the residence for years prior to the foreclosure, was residing there at the time the Notice of

13   Default was recorded, and was bequeathed the residence, yet he received no mail, phone calls, or

14   messages referencing the foreclosure or alternatives to foreclosure.

15       Defendant makes its familiar argument that plaintiff is not a borrower within the meaning

16   of Civil Code § 2920.5(c)(1).  Defendant also cites Civil Code § 2924.12(a) for the proposition

17   that "[i]f a trustee's deed upon sale has not been recorded, a borrower may bring an action for

18   injunctive relief to enjoin a *material* violation of Section . . . 2924.9."  ECF No. 4 at 12 (emphasis

19   in original).  Defendant's argument here is difficult to decipher.  Defendant does not appear to

20   dispute whether a trustee's deed upon sale has been recorded, because defendant has asked the

21   court to take judicial notice of the trustee's deed upon sale.  ECF No. 5 at 2, 16-17.  The court

22   presumes that defendant disputes the materiality of the alleged violation of § 2924.9.  Defendant

23   reiterates that it had already explored foreclosure alternatives and entered into an agreement with

24   Michael S. to modify the mortgage before Michael S.'s death.  Defendant then contends that any

25   _____

26   [19] Defendant's citation to *Vikco* adds nothing to this analysis.  *Vikco* stands for the
     proposition that a regulatory statute only creates a private right of action if there is clear

27   legislative intent to do so.  70 Cal. App. 4th at 62-63.  HBOR allows specified claims for
     specified statutory violations, as described here.  *See Morris*, 78 Cal. App. 5th at 295, 293 Cal.

28   Rptr. 3d at 441 ("The HBOR lays out a carefully calibrated enforcement mechanism.").

1    violation of the statute was not material because it did not affect the borrower's (i.e., Michael

2    S.'s) loan obligations or the loan modification process.  *Id*.  But plaintiff responds that "the statute

3    specifically requires the mortgage servicer to contact the borrower to assess the borrower's

4    financial situation AFTER recording the notice of default" and that defendant did not make

5    contact before or after.  ECF No. 7 at 10-11 (emphasis in original).

6        <u>Analysis</u>.  California Civil Code § 2924.9 imposes requirements after a notice of default

7    has been recorded.  The mortgage servicer must send a written communication to the borrower

8    offering information about foreclosure prevention alternatives "[u]nless the borrower has

9    previously exhausted the first lien modification process."  *Id*. § 2924.9(a).  Unless excused, the

10   notice of default should be "sent by registered or certified mail … to each trustor or mortgagor"

11   within ten business days after the notice is recorded.  Cal. Civ. Code § 2924b(b)(1).

12       Defendant appears to argue that it was excused from this requirement because Michael

13   S.'s December 18, 2019 loan modification agreement had "exhausted" the modification process.

14   But in making this argument, defendant implicitly concedes that it did not mail a copy of the

15   Notice of Default to the residence.  Defendant fails to show that it was actually excused from the

16   requirement that it do so for multiple reasons.  First, defendant has not shown that Michael S.'s

17   loan modification agreement was a result of Michael S. having exhausted a lien modification

18   process.  Second, defendant does not address whether Michael S.'s apparent cure of any earlier

19   default by making payments up to December 1, 2020 was a re-set that renewed defendant's

20   obligation to provide information as required by § 2924.9(a).  Third, defendant has not shown that

21   it was excused from providing information about foreclosure prevention alternatives to plaintiff

22   as successor in interest under *Shetty* and/or as administrator of Michael S.'s estate.  In particular,

23   *Shetty* holds that a successor in interest has a right of reinstatement under § 2924c.  91 Cal. App.

24   5th at 802, 308 Cal. Rptr. at 630.  The court expresses no opinion at this juncture whether a

25   successor in interest's right to reinstate a loan re-sets the servicer's obligations under § 2924.9(a),

26   except to note that defendant's argument does not refute this possibility.[20]  For these reasons, the

27       [20]  Successors in interest are entitled to receive a copy of a notice of default provided there
     is a recorded instrument giving at least constructive notice of the successor's interest in the
28   property.  Cal. Civ. Code § 2924b(c)(2)(A).

33

1  third cause of action sufficiently alleges a violation of § 2924.9(a), and defendant's motion to

2  dismiss the third cause of action must be denied.

3        <u>Seventh Cause of Action (Negligence)</u>

4        The complaint alleges a tort claim of negligence based on the statutory violations

5  described herein, as well as violations of:  (1) California Civil Code §§ 2924(a)(1), 2934(a)(1),

6  2934(a)(e) and 2924(a)(6) (that the servicer lacked legal authority to conduct the foreclosure

7  sale); (2) failure to rescind foreclosure activity in violation of California Civil Code § 2923.6(c);

8  (3) failure to provide plaintiff with a single point of contact in violation of California Civil Code §

9  2937; (4) failure to provide written acknowledgment of receipt of a loan modification application

10  in violation of California Civil Code § 2924.10; and (5) failure to contact after recording an

11  assignment of the Deed of Trust to notify that it is the new beneficiary of the Deed of Trust in

12  violation of 15 U.S.C. § 1641(g).  ECF No. 1 at 14-15.  Defendant argues that it is a financial

13  institution that does not owe plaintiff a duty of care, that it did not breach any such duty, and that

14  any breach did not damage plaintiff.  ECF No. 4 at 15-16.  Plaintiff reiterates that defendant

15  violated various statutory requirements.  ECF No. 7 at 7-8.

16        <u>Analysis</u>.  Defendant is correct that the Supreme Court of California has held that a lender

17  does not owe a borrower a duty of care to process, review, and respond carefully and completely

18  to a loan modification application.  *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal. 5th 905, 948,

19  505 P.3d 625, 650.  The *Sheen* decision "observed that judgments about the duties of lenders to

20  homebuyers 'should be left to the Legislature.'"  *Mohandas v. Wells Fargo Bank, N.A.*, No. LA

21  CV21-00349 JAK (PDx), 2023 WL 5506004, at *15 (C.D. Cal. July 13, 2023) (quoting *Sheen*, 12

22  Cal. 5th at 947-48).  Under *Sheen,* defendant does not have a common law duty of care to plaintiff

23  with respect to defendant's alleged failures to comply with HBOR's statutory scheme.  *See*

24  *Marasigan*, 2023 WL 3470128, at *5 (relying on *Shee*n in holding that a lender had no duty of

25  care to discuss foreclosure alternatives with a surviving child who attempted to contact the lender

26  after his parents' death).  *Sheen* is dispositive as to plaintiff's negligence claim and the seventh

27  cause of action must be dismissed.  Further, given that this claim fails as a matter of law, leave to

28  amend would be futile.

1    Eighth Cause of Action (Wrongful Foreclosure)

2    The complaint's eighth cause of action alleges a tort claim for wrongful foreclosure.

3    Plaintiff seeks to have the foreclosure sale vacated and demands damages, including punitive

4    damages.  ECF No. 1 at 16.  Defendant advances four reasons why this claim should be

5    dismissed:  (1) the complaint does not allege facts showing that the trustee's sale was illegal,

6    fraudulent, or willfully oppressive; (2) the complaint does not allege facts showing that plaintiff

7    was prejudiced or harmed, or that the "borrower" was not in default, or that defendant interfered

8    with payments or otherwise prevented plaintiff from avoiding foreclosure; (3) plaintiff has not

9    alleged that he could have tendered the full amount of indebtedness before the foreclosure sale;

10    and (4) the sale cannot be set aside because the complaint fails to name the purchaser, identified

11    by defendant as "NCI" and who defendant claims is an indispensable party.  ECF No. 4 at 17.

12    Plaintiff responds that the Notice of Default, the notice of sale, and the trustee's deed upon sale

13    are "illicit recordings" and "disparaging instruments" and that defendant breached a duty of care

14    by recording "wrongful notices."  ECF No. 7 at 14.  Plaintiff further argues he has suffered

15    substantial injury and foreseeable harm because of wrongful foreclosure and subsequent eviction.

16    Analysis.  "Wrongful foreclosure 'is an equitable action to set aside a foreclosure sale, or

17    an action for damages resulting from the sale, on the basis that the foreclosure was improper.'"

18    *Warren*, 671 F. Supp. 3d at 1045-46 (quoting *Sciarratta v. U.S. Bank Nat'l Ass'n* (2016) 247 Cal.

19    App. 4th 552, 561, 202 Cal. Rptr. 3d 219); *see also Morris*, 78 Cal. App. 5th at 294, 293 Cal.

20    Rptr. At 440 ("The traditional method to challenge a nonjudicial foreclosure sale is a suit in

21    equity to have the sale set aside and to have the title restored." (citation and internal quotation

22    marks omitted)).  Mere technical violations will not support a wrongful foreclosure claim, instead

23    "the foreclosure must have been entirely unauthorized."  *Sciarratta*, 247 Cal. App. 4th at 562, 202

24    Cal. Rptr. 3d 219 (citation omitted); *see also Herrejon*, 980 F. Supp. 2d at 1201 ("Prejudice is not

25    presumed from mere irregularities." (citation and internal quotation marks omitted)).  However,

26    "[a] lender cannot on the one hand rely on California law as the foundation for its right to conduct

27    a non-judicial foreclosure, while on the other hand ignoring any restrictions or procedural

28    requirements that are part of that process under California law."  *Cheung v. Wells Fargo Bank,*

35

1    *N.A.*, 987 F. Supp. 2d 972, 978-79 (N.D. Cal. 2013) (denying motion to dismiss wrongful

2    foreclosure claim).

3        The eighth cause of action cursorily alleges the elements of a wrongful foreclosure claim,

4    which are:  "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale

5    of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking

6    the sale … was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges

7    the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused

8    from tendering."  *Cardenas*, 281 F. Supp. 3d at 871 (citation omitted).  Although the claim for

9    wrongful foreclosure is stated in conclusory fashion, the complaint includes factual allegations

10    that defendant ignored plaintiff's efforts to make contact after Michael S.'s death, failed to

11    engage with plaintiff either as a successor in interest or as administrator of Michael S.'s estate,

12    did not offer information about alternatives to foreclosure, failed to mail the Notice of Default

13    prior to the foreclosure, and also that plaintiff consequently had to pay additional interest, late

14    charges, and fees.  These are more than mere technical violations of applicable statutes.  The

15    complaint thus sufficiently alleges the first and second elements of a claim for wrongful

16    foreclosure.  As for the third element, plaintiff plausibly alleges that he is excused from the tender

17    requirement because defendant's HBOR violations never afforded him an opportunity to tender.

18        Defendant argues – also in conclusory fashion – that the sale cannot be set aside because

19    the buyer (NCI) has not been named as a defendant.  ECF No. 4 at 17.  The court declines to

20    reach the joinder issue at this time.  *See Duarte v. Rushmore Loan Mgmt. Servs., LLC*, No. 5:23-

21    cv-01101-MCS-KK, 2023 WL 9420445, at *3 (C.D. Cal. Dec. 5, 2023) (in light of cursory, tardy

22    briefing the court denied without prejudice to renewal a Rule 12(b)(7) motion to dismiss wrongful

23    foreclosure action for failure to add parties and purchasers); *Ogamba v. Wells Fargo Bank, N.A.*,

24    2:17-cv-01754-KJM-AC, 2017 WL 4251124, at *2 (E.D. Cal. Sept. 26, 2017)  (denying motion

25    to add an out-of-state purchaser that would have destroyed diversity jurisdiction).  Also, a set-

26    aside of the sale is not the only available remedy for wrongful foreclosure; damages may be

27    awarded upon a showing that the sale was procedurally irregular.  *Morris*, 78 Cal. App. 5th at

28    294, 293 Cal. Rptr. at 440-41 (citing *Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.

1    App. 4th 394, 408, 186 Cal. Rptr. 3d 625, 635).  This issue may be revisited on a properly briefed

2    motion to join NCI, or a motion to dismiss for failure to join NCI.  Accordingly, defendant's

3    motion to dismiss the eighth cause of action must be denied.

4        Ninth Cause of Action (California Business and Professional Code § 17200 et seq.)

5        The complaint's ninth cause of action alleges a violation of California's Unfair

6    Competition Law (UCL), California Business & Professional Code § 17200.  Plaintiff alleges that

7    defendant violated the HBOR by failing to timely and fairly evaluate him for loan modification,

8    negligently making false representations likely to deceive members of the public by offering but

9    failing to provide actual assistance, implementing a severely flawed and purposefully lengthy loss

10   mitigation review process causing borrowers like plaintiff to incur continuing interest charges that

11   would otherwise be mitigated, late fees, and ultimately foreclosure costs that would erode a

12   borrower's equity, ignoring plaintiff's communications, violating HBOR §§ 2923.5, 2924(a)(1),

13   2934a(a)(1), 2924a(e), 2923.6(c), 2923.7, 2924.9, and 2924.10, and failing to advise homeowners

14   of a transfer of their deed of trust in violation of 15 U.S.C. § 1641(g).  ECF No. 1 at 16-17.

15       Defendant argues that the complaint fails to allege with sufficient particularity and pleads

16   no facts showing that defendant violated any law, violated antitrust law, or engaged in an act or

17   practice likely to deceive members of the public.  ECF No. 4 at 18.  Defendant also argues that

18   plaintiff's remedies are limited to injunctive relief and damages, but that plaintiff cannot obtain

19   injunctive relief and restitution because plaintiff failed to include the purchaser (NCI) as an

20   indispensable party.  *Id.*

21       Analysis.  Section 17200 of the UCL prohibits "any unlawful, unfair or fraudulent

22   business act or practice and unfair, deceptive, untrue or misleading advertising."  There are three

23   categories of UCL claims:  unlawful, unfair, and fraudulent.  *Beaver v. Tarsadia Hotels*, 816 F.3d

24   1170, 1177 (9th Cir. 2016).  UCL claims alleging unlawful conduct may rely on alleged

25   violations of the HBOR and RESPA.  *Warren*, 671 F. Supp. 3d at 1050.  UCL claims alleging

26   unfair acts or practices must demonstrate that either "(1) the public policy which is a predicate to

27   a consumer unfair competition action is tethered to specific constitutional, statutory or regulatory

28   provisions, or (2) that the challenged business practice is immoral, unethical, oppressive

37

1   unscrupulous, or substantially injurious to consumers." *Id*. at 1050-51 (citation and internal

2   quotation marks omitted).  UCL claims alleging fraudulent conduct must demonstrate "an

3   intentional misrepresentation, deceit, or concealment of material fact known to the defendant with

4   the intention on the part of the defendant of thereby depriving a person of property or legal rights

5   or otherwise causing injury." *Id*. at 1051 (citation and internal quotation marks omitted).

6         As in *Warren*, the complaint's UCL claim sufficiently alleges violations of the HBOR and

7   RESPA and therefore also plausibly alleges a UCL "unlawful conduct" claim.  But the complaint

8   fails to sufficiently allege a UCL claim for "unfair" or "fraudulent" practices.  *See id*. at 1050-51.

9   As in *Warren*, the ninth cause of action as pleaded may proceed "based on the predicate

10  violations of the HBOR and RESPA, [but] more is needed to state a UCL claim under the 'unfair'

11  or 'fraudulent' theories of liability." *Id.* at 1051.  Accordingly, those subclaims of the ninth

12  cause of action must be dismissed with leave to amend.

13        <u>Tenth Cause of Action (California Civil Code § 3412)</u>

14        The complaint's tenth cause of action seeks cancellation of the Notice of Default and the

15  Notice of Trustee's Sale pursuant to California Civil Code § 3412.  According to the complaint,

16  these documents are void or voidable because of violations of California Civil Code §§ 2923.5,

17  2924(a)(1), 2934a(a)(1), 2924a(e), 2923.6(c), 2923.7, 2924.9 and 2924.10.  ECF No. 1 at 18.

18        Defendant seeks dismissal on the grounds that the complaint fails to plead facts showing

19  the Notice of Default and the Notice of Trustee's Sale are void or voidable and because the

20  purchaser (NCI) is an indispensable party to an action to set aside the sale.  ECF No. 4 at 19.

21  Plaintiff responds that the complaint adequately alleges "illicit recordings" and "disparaging

22  instruments."  ECF No. 7 at 14.

23        <u>Analysis</u>.  Section 3412 allows cancellation of a written instrument that "may cause

24  serious injury to a person against whom it is void or voidable."  A plaintiff seeking cancellation

25  "must prove [or for purposes of this motion, allege] facts not mere conclusions, showing the

26  apparent validity of the instrument designated, and point out the reason for asserting that it is

27  actually invalid." *Ghalehtak*, 304 F. Supp. 3d at 889 (internal quotation marks and citations

28  omitted).

The tenth cause of action merely recites a string of statutes alleged to have been violated – some of which are addressed in other parts of the complaint and some of which are not – without describing the violations and without satisfying Rule 9(b) of the Federal Rules of Civil Procedure, to plead the particular facts that allegedly render the Notice of Default and the Notice of Trustee's Sale essentially fraudulent. *See id*. The reference to a "Notice of Trustee's Sale" is itself ambiguous because it might be construed as referring to either a notice of sale or the trustee's deed of sale, or both. *See In re Spikes*, 662 B.R. at 710-11. For these reasons, the tenth cause of action must be dismissed with leave to amend.

Declaration Required by California Civil Code § 377.32

To proceed on the surviving claims, and any amended claims, based on plaintiff's alleged capacity as administrator of Michael S.'s estate and/or as successor in interest within the meaning of the California survivorship statute, plaintiff must submit a declaration compliant with Cal. Civ. Code § 377.32. *See Hayes v. County of San Diego*, 736 F.3d 1223, 1229 (9th Cir. 2013) (where there was no indication whether the plaintiff had filed the affidavit necessary under California law to commence a survival action, the Ninth Circuit remanded for a decision whether the plaintiff had standing to assert survival claims for violation of her father's rights under the Fourth Amendment). Plaintiff must submit the declaration regardless of whether he elects to file an amended complaint. If plaintiff fails to file a § 377.32 declaration, the court may dismiss the surviving claims insofar as they are alleged in plaintiff's capacity as administrator of Michael S.'s estate and/or as successor in interest within the meaning of the California survivorship statute.

Order And Recommendations

Accordingly, it is ORDERED that plaintiff shall submit a declaration compliant with California Civil Code § 377.32 in order to proceed on his remaining claims, and any amended claims, in the capacity of Administrator of the Estate of Michael S. Shiflett and/or as successor in interest within the meaning of the California survivorship statute. Plaintiff shall file any such declaration within 30 days of service of this order, regardless of whether or not plaintiff chooses to file an amended complaint.

////

39

1    Defendant's Request for Judicial Notice, ECF No. 5, is GRANTED.  The court limits its

2    judicial notice to the indisputable facts established by the records attached to defendant's request

3    as to their filing the Recorder's Office and the text of those records, but not the truth of factual

4    representations asserted in them where the accuracy of any such assertion is disputed.

5    It is further RECOMMENDED that the motion to dismiss filed by Defendant Lakeview

6    Loan Servicing, LLC, ECF No. 4, be GRANTED IN PART AND DENIED IN PART as follows:

7    1.    That the seventh cause of action be DISMISSED WITH PREJUDICE.

8    2.    That the second, fourth and tenth causes of action be DISMISSED WITH LEAVE

9    TO AMEND within 30 days of service of this order, provided that any amendment of the second

10   cause of action SHALL NOT BE DUPLICATIVE of the claims alleged in the first and third

11   causes of action.

12   3.    That the motion to dismiss be DENIED as to the complaint's first, third, fifth,

13   sixth, and eighth causes of action; this denial includes both subparts of the first cause of action.

14   4.    That the motion to dismiss be DENIED as to the subpart of the ninth cause of

15   action that alleges a UCL claim for unlawful conduct, and that the subparts of the ninth cause of

16   action that allege UCL claims for unfair or fraudulent conduct be DISMISSED WITH LEAVE

17   TO AMEND.

18   5.    That plaintiff shall not combine multiple claims within a single cause of action in

19   any amended complaint.  Each claim must be set out as a separately numbered cause of action.

20   These findings and recommendations are submitted to the United States District Judge

21   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days

22   after being served with these findings and recommendations, any party may file written

23   objections with the court and serve a copy on all parties.  Such a documents should be captioned

24   "Objections to Magistrate Judge's Findings and Recommendations."

25   /////

26   /////

27   /////

28   /////

40

1        Failure to file objections within the specified time may waive the right to appeal the

2   District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 95

3   F.2d 1153 (9th Cir. 1991).

4

5   Dated: February 25, 2025

6                                                        EDMUND F. BRENNAN
                                                         UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28